[Crim. No. 1760. Third Dist. Aug. 27, 1941.]

THE PEOPLE, Respondent, v. LEROY HALEY, Appellant.

C. K. Curtright, Edwin B. Polhemus and P. H. Johnson for Appellant.

Earl Warren, Attorney General, and J. Q. Brown, Deputy Attorney General, for Respondent.

THE COURT.—The defendant was convicted on seven separate counts of an indictment. The first three counts charged him with kidnapping different individuals with intent to rob them. These three counts were subsequently amended, by leave of court, by alleging that the kidnappings were accompanied by bodily injuries suffered by the respective victims. Other counts of which the defendant was convicted charged him with mayhem, robbery by means of force and fear, and with kidnapping.

To each of the counts the defendant first plead not guilty and not guilty by reason of insanity. The plea of insanity was subsequently withdrawn. At the time of hearing the motion to amend the indictment, counsel for defendant filed a verified petition, supported by his affidavit, asking that

the defendant be declared to be a sexual psychopath under the provisions of chapter 4 of the Welfare and Institutions Code, which, upon hearing, was denied.

A petition for a writ of prohibition on the ground last mentioned was then presented to the Supreme Court and denied. Thereupon a petition for a writ of *habeas corpus* was presented to this court on the same ground, and denied.

After trial and conviction of the defendant as previously stated, but prior to the pronouncing of sentence, the defendant moved to arrest judgment for failure of the court to determine that he was a sexual psychopath pursuant to the provisions of the Welfare and Institutions Code, which petition was denied. A motion for a new trial was also denied, and the defendant was thereupon sentenced to imprisonment, as provided by law, in the state prison for the term of his natural life, without the privilege of parole. From that judgment this appeal was perfected.

It is not contended the evidence is insufficient to support the verdicts of conviction, but it is asserted the court erred in refusing to determine that the defendant was a sexual psychopath, and therefore to suspend the criminal proceeding as provided by the Welfare and Institutions Code; that the court erred in allowing the amendments of the indictment to allege that the kidnappings were accompanied by bodily injuries inflicted upon the respective victims without first resubmitting the proposed amendments to the grand jury for that purpose. Finally it is claimed the prosecuting attorney was guilty of prejudicial misconduct in exhibiting to one of the defendant's character witnesses on cross-examination certain lewd pictures, and by his commenting to the jury upon those pictures by arguing that defendant's possession of them indicated his immoral and depraved character.

Since it is not contended the evidence is insufficient to support the verdicts and judgment of conviction of the crimes charged, except for the alleged errors above mentioned, we shall make no attempt to review the details of the revolting facts attending the commission of the crimes.

Without doubt there is an abundance of evidence to support every essential element of each crime of which the defendant was convicted. The record clearly shows that the defendant kidnapped, with the use of a pistol, at least five different boys, aged from 17 to 21 years, and after taking them to sequestered spots, he bound and gagged them, re-

moved their clothes, robbed some of them of all of their money, and cruelly tortured them by maiming and injuring their private organs. His victims were then abandoned and left in their pain and bondage to procure their own release and to make their way back to town. One or two of the boys were so seriously injured as to require medical aid. One of them was confined to a hospital on that account for 17 days. Five of the victims of these assaults positively identified the defendant as their assailant. There appears to be no doubt of his identity, nor of the cruel and revolting conduct with which he invariably kidnapped the boys and accomplished his purpose.

It is appellant's position that upon the filing of the affidavit under section 5501 of the Welfare and Institutions Code the trial court was deprived of jurisdiction to continue the criminal proceeding, and then retained jurisdiction only to proceed with a hearing upon the issue of sexual psychopathy as presented by the affidavit; that a finding in favor of appellant in this regard under section 5500 of the same code made it mandatory on the trial court to adjourn the criminal proceeding until the petition was finally determined. It is contended the provisions of the Welfare and Institutions Code relating to sexual psychopaths should be so construed as to give it the same force and effect as the insanity provisions of sections 1367 and 1368 of the Penal Code. We think not. The two statutes are essentially different.

There are no prior decisions in this state construing the foregoing provisions of the Welfare and Institutions Code relating to sexual psychopaths, and it therefore becomes necessary for us to determine the effect of that statute. Section 5500 of Chapter 4 of the Welfare and Institutions Code of California defines a "sexual psychopath" as follows:

"As used in this chapter, 'sexual psychopath' means any person who is affected, in a form predisposing to the commission of sexual offenses *against children,* and in a degree constituting him a menace to the health or safety of others, with any of the following conditions:

(a) Mental disease or disorder.

(b) Psychopathic personality.

(c) Marked departures from normal mentality."

Appellant relies principally on the following two sections of the same code. Section 5501 provides in part as follows:

"If, when any person is charged with a crime, either before or after adjudication of the charge, it appears by affidavit to the satisfaction of the court that such person is a sexual psychopath within the meaning of this chapter, the court may adjourn the proceeding or suspend the sentence, as the case may be, and thereupon proceed as provided by this chapter."

Section 5502 reads:

"If, upon the hearing on the allegation of sexual psychopathy, the person before the court upon trial or under conviction, is found not to be a sexual psychopath, the court may proceed with the trial or impose sentence, as the case may be. If the person is committed to a State hospital as a sexual psychopath, whenever thereafter . . . he is no longer a menace to the health or safety of others, the court may order his return to await the further action of the court in respect to trial or sentence upon the criminal charge."

We are of the opinion the court has a sound discretion under section 5501, *supra,* to determine from the affidavits filed and the evidence adduced whether the petitioner is in fact a sexual psychopath as defined by the preceding section of that code. The section clearly infers that the court possesses that discretion, for the court may adjourn the criminal proceeding only when "it appears by affidavit *to the satisfaction of the court* that such person is a sexual psychopath within the meaning of this chapter." The court is not ousted of jurisdiction over the criminal proceeding by the mere filing of an affidavit asserting that the accused is a sexual psychopath. It is not mandatory that the court shall adjourn the criminal proceeding when the affidavit is filed. The word "may," as it is used in that section should not be construed as a mandatory direction to the court regardless of the sufficiency of the showing. It is merely discretionary. Unless there is an abuse of that discretion the ruling of the court in that regard may not be disturbed on appeal.

The appellant contends that the judge of the trial court first expressed his opinion to the effect that the petition sufficiently alleged facts showing that the defendant was a sexual psychopath as defined by the statute, and that the petition should therefore have been granted. We do not agree with this contention.

In denying appellant's motion for adjournment of the criminal proceedings the court said, "In making this order I

won't say that it doesn't appear to the satisfaction of the court (that the defendant is a sexual psychopath) . . . but I want to make it (the order) in such a way that there will be no doubt but that you can properly protect the rights of your client on your writ."

Upon renewal of the motion to suspend the criminal proceedings the court further said, "Well, it not appearing by affidavit to the satisfaction of the court that Leroy Haley is a sexual psychopath within the meaning of the statute, the motion is denied. . . . The affidavit is before me and it doesn't appear to my satisfaction, from that affidavit, that he is a sexual psychopath."

The court did not say, at the time of the hearing on the original motion to adjourn the criminal proceedings, that the affidavits were sufficient. The language employed by the court simply indicates that the trial judge desired to grant the defendant the benefit of everything disclosed by the record so as not to preclude the higher court from construing the statute.

█ Keeping in mind the language of section 5500 defining a sexual psychopath the language employed in section 5501 becomes clear. The language of section 5501, "If, when any person is charged with a crime," was intended to mean charged with a crime having some relation to the type of offenses referred to in section 5500. The legislature further indicated their intention by the use of the word "may" in referring to the action to be taken by the court. The language of section 5501, "the court may adjourn the proceeding or suspend the sentence," was intended to vest in the trial court a discretion in determining whether the crime charged is sufficiently related to those matters set forth in an affidavit alleging sexual psychopathy.

A contrary construction of the foregoing provisions would be most illogical in view of the use of the word "may." If the legislature had not intended that the nature of the crime should be considered in passing upon the allegations of an affidavit of sexual psychopathy, but had intended that the affidavit alone be considered, the words "must" or "shall" would have been employed in referring to the action to be taken by the court.

█ From the foregoing conclusions it follows that the trial court in the present case did have a discretion in

the matter of considering the petition for adjournment of the criminal proceedings, and it was within the province of the court to take into consideration the offenses with which appellant was charged in determining what course of action was to be followed upon the filing of the affidavit alleging sexual psychopathy. If the nature of the crimes for which appellant was charged had no connection with nor relation to the offenses (offenses against children) alleged in the sexual psychopathic affidavit, the petition for adjournment of the criminal proceedings was properly denied. As already stated, appellant was charged with the crimes of kidnapping for the purpose of robbery, robbery by force and fear, and mayhem. These crimes are not related in any manner to the commission of sexual offenses against children, and we can find no abuse of discretion on the part of the trial court, in the exercise of its power, either before or after the judgment of conviction, in denying appellant's petition to adjourn the proceeding or suspend the sentence. Sections 5502 and following do not have any bearing upon the question in issue, but simply outline the procedure to be followed in the event that the court does adjourn the criminal proceeding or suspend the sentence.

 The defendant was not prejudiced by the amendment of three counts of the indictment by adding to each of them the statement that the kidnapped persons ''suffered bodily harm'' incident to the commission of the crimes charged. (*People* v. *Britton,* 6 Cal. (2d) 1 [56 Pac. (2d) 494].) The amendments were made by leave of court, without resubmitting the indictment to the grand jury. It is true an indictment may not be amended in that manner so as to ''change the offense charged.'' (Sec. 1008, Penal Code.) The addition of the language mentioned did not change the offenses charged. It merely supplied the statement of facts which may be considered by the jury in determining the penalty for the crime as provided by section 209 of the Penal Code. The Britton case declares that the section last mentioned defines but one criminal offense. These challenged counts of the indictment charged the defendant with kidnapping named individuals with the intention of holding or detaining them for the purpose of robbery. That offense is not changed by adding the statement that the victims suffered bodily harm in the commission of the crimes. The allegation with relation to bodily harm is not an essential element of the crime

of kidnapping. The changes in the present indictment in that regard were therefore harmless. The indictment in the Britton case contained no such language. In that case the defendant pleaded guilty to the charge of kidnapping. Upon pronouncing judgment the court received evidence of bodily harm for the purpose of determining the penalty for the crime.

The same rule prevails regardless of whether the accused person pleads guilty or not guilty. It follows that since the language with respect to bodily harm is not a necessary element of the crime of kidnapping and holding or detaining one for the purpose of robbery or for any of the other reasons mentioned in section 209 of the Penal Code, the offenses charged in three counts of the indictment were not materially changed, and the defendant was not prejudiced thereby.

Finally, the appellant contends the prosecuting attorney was guilty of prejudicial misconduct in cross-examining a character witness called in behalf of the defendant.

Under the rule of law announced in *People* v. *Buchanan,* 119 Cal. App. 523 [6 Pac. (2d) 538], a prosecuting attorney may cross-examine character witnesses as to their knowledge of reports of specific acts or charges inconsistent with the good character of the defendant as testified to by such witnesses on direct examination. At page 526 of the Buchanan case, *supra,* the right of the prosecuting attorney to inquire into the witness's knowledge regarding specific acts is explained in the following language:

"A witness who testifies that the general reputation of the accused is good in a particular respect is not declaring his personal opinion, for that is inadmissible, but is stating in effect that, having contacted with a substantial number of the people of the community who would be likely to know the character of the accused, he has not heard or learned of anything which would justify the conclusion that the latter was not of good character. Obviously, the prosecutor is not bound by such a statement on direct examination, and, under his basic right to cross-examine the witness upon the subject of his direct testimony, the district attorney may inquire whether the witness did not hear of a certain specified matter detrimental to the character to which he has testified."

Mr. Frye, who testified as a character witness in behalf of appellant, was asked upon direct examination: "Are you acquainted with his reputation for decency and morality?"

Mr. Frye said, "Yes," and upon being asked if that reputation was good or bad, he answered, "It is good." Upon cross-examination, the prosecuting officer asked the following question: "Mr. Frye, have you ever had occasion to discuss the fact that he has been having immoral acts with young boys thirteen and fourteen years old?" Counsel for appellant objected to this question, and the court sustained the objection upon the ground that the question was bad in form. Mr. Frye was then asked if he had not heard the defendant had committed immoral acts with a certain boy. The witness stated that he did not recall the name of the boy, but he had read in the newspapers that the defendant had been accused of immoral conduct with different boys. After further cross-examination regarding the knowledge of the witness of specific alleged immoral acts and conduct of the defendant in connection with young boys, the witness was asked if he knew that certain immoral pictures had been found in the defendant's room. ■ Over objection of counsel for the defendant the witness was then shown certain pictures obtained from the defendant's room, and asked if he had not heard of defendant taking a thirteen or fourteen year old boy into his room and showing him these indecent pictures. The witness was asked if he did not think the pictures were immoral. The trial court sustained an objection to this question. The propounding of that question did not constitute prejudicial misconduct.

Assuming, without so deciding, that it was improper to produce and exhibit the immoral pictures to the character witness, any prejudice resulting therefrom was cured by the following admonition which was then given to the jury by the court:

"He isn't on trial for those offenses or anything except what is included in the indictment, and the jury will understand that, and I am going to instruct them on that at the determination of the case. There is no evidence here, the questions asked were questions, and questions are not evidence. Now, he is only on trial for the charges contained in this indictment. Proceed."

■ We agree with counsel for the appellant that it was improper for the prosecuting attorney to comment, during his argument to the jury, on the failure of the defendant to deny certain charges contained in the questions propounded on cross-examination to the character witness. As

already indicated, matters arising during the course of the cross-examination of a character witness are not to be considered as evidence of the commission of the offense charged. The court specifically so instructed the jury. The misconduct of the prosecuting officer, in that regard, was cured by the admonition of the court. With respect to the alleged prejudicial argument of the prosecuting officer, the following proceedings occurred:

"Mr. O'Shea: What I am trying to get, gentlemen of the jury, is this: You know, as a matter of fact, as a matter of experience, that if he (defendant) says that those things were not true, he couldn't have gotten on that witness stand too quick to deny it. You would do it, I would do it, any man would do it.

"The Court: He is not required to do it, Counsel.

"Mr. O'Shea: He is not required to do it, but I can comment on it under the law.

"The Court: The mere fact that you asked the questions doesn't make that evidence; those questions are not evidence.

"Mr. O'Shea: I am not saying they are, your Honor.

"The Court: The only things that are evidence is that that is testified to. *You asked Mr. Frye if he knew those things, he said no. Now, that is the end of it. It isn't evidence, it is nothing to be considered by this jury in any way.*"

We do not deem it necessary to resort to the provisions of section 4½ of article VI of the Constitution, but we do wish to state that the record before us fails to disclose any evidence of a miscarriage of justice arising out of the conviction of appellant.

The judgment and order are affirmed.