PUBLIC SERVICE COMPANY OF INDIANA v.
TACKETT, ADMINISTRATOR.

[No. 16,900. Filed April 3, 1943. Rehearing denied April 30, 1943.]

308

*Willis Hickam,* of Spencer, and *Evans & Hebel* and *Owen S. Boling,* all of Indianapolis, for appellant.

*Gilbert W. Butler* and *John E. Hurt,* both of Martinsville, and *Claude Hoskins,* of Spencer, for appellee.

FLANAGAN, P. J.—Appellee, Thomas Tackett, administrator of the estate of Robert Tackett, deceased,

brought this action against the appellant to recover damages on account of the wrongful death of his decedent alleged to have been caused by the negligence of the appellant. Issues of law were joined on the amended complaint in a single paragraph by a motion to make more specific and by a demurrer for want of facts, each of which was overruled. Issues of fact were joined on the complaint by answer in general denial. Trial by jury resulted in a verdict and judgment for appellee in the sum of $2,000.

Errors relied upon for reversal are: (1) Overruling appellant's motion to make the amended complaint more specific; (2) overruling appellant's demurrer to the amended complaint; and (3) overruling appellant's motion for a new trial.

The motion for a new trial challenges the sufficiency of the evidence, the amount of the verdict, and the correctness of certain instructions given.

Rulings on motions to make more specific are largely in the discretion of the trial court and this court will not consider such ruling cause for reversal unless the trial court is shown to have abused its discretion and that the complaining party has been harmed. *Meyer* v. *Garvin* (1942), 110 Ind. App. 403, 37 N. E. (2d) 291. Appellant has not pointed out wherein the trial court abused its discretion or wherein it has been harmed. There was therefore no reversible error in the ruling on the motion to make more specific.

The theory of the complaint is that the decedent died by electrocution by coming in contact with a wire used by appellant in transmitting electrical current; that his contact with the wire was the result of the negligence of the appellant; that the decedent was an emancipated minor twenty years of age; and that his mother, father

and four brothers were his surviving dependent next of kin.

The demurrer charges that the allegations of the complaint are insufficient regarding, (1) emancipation; (2) dependent next of kin; and (3) negligence.

The allegations of the amended complaint concerning emancipation follow:

"That said decedent was twenty years of age . . . ; that at the time of his death and for more than 3 years immediately prior thereto, he had worked for divers persons; and during all said time and up to the time of his death collected all his wages, bought his own clothing and in every way solely conducted his own affairs; collecting and receiving his wages, making his own contracts of employment and paying for all his necessaries. . . ."

Appellant's motion to make more specific had been directed to the allegations concerning emancipation and had sought to have the facts stated which were relied upon to support each alleged conclusion therein. This motion was overruled. Therefore the sufficiency of the allegations to withstand a demurrer must be determined from the facts stated without support from any such alleged conclusions which were not drawn from facts fully pleaded and set out. *Neal* v. *Baker* (1926), 198 Ind. 393, 153 N. E. 768; *Enterprise, etc., Co.* v. *Craig* (1924), 195 Ind. 302, 144 N. E. 542, 145 N. E. 309.

Emancipation, as applied to the relinquishment of the claim to the services of a minor child, means to free a child for all the period of its minority from care, custody, control and service. *Wabash R. Co.* v. *McDoniels* (1915), 183 Ind. 104, 107 N. E. 291. It need not be evidenced by formal writing but may be implied by the conduct of the father. *Duzan* v. *Myers* (1903), 30 Ind. App. 227, 65 N. E. 1046.

The amended complaint alleged the conclusion that the decedent was emancipated based upon the facts that he was 20 years old at the time of his death, that ■ for more than three years he had worked for divers persons, made his own contracts of employment, collected all his own wages, bought his own clothes and in every way conducted his own affairs. We think this is sufficient allegation of emancipation to withstand a demurrer.

The allegations of the amended complaint concerning dependent next of kin follow:

> "That said decedent left surviving him as his next of kin his father, Thomas Tackett, his mother, Ella Tackett, his brothers, Albert Tackett, George Tackett, John Tackett and Ralph Tackett. That said decedent was twenty years of age and unmarried and during all his lifetime lived with his said father, mother and brothers and each of them. . . ." That said decedent "assisted his said father, mother and brothers aforesaid, in that he, at various and frequent intervals made voluntary and frequent financial contributions to them and assisted in the payment of the up-keep of the home by making frequent purchases of food and clothing for his said father, mother and brothers. . . ."

Appellant contends, (1) that "next of kin" is determined by the civil law and in this case are the father and mother, and not the brothers; (2) if the decedent was emancipated the father has waived all pecuniary interest in the continued existence of the deceased and damages cannot be recovered which would inure to his benefit; and (3) the complaint alleges only pecuniary loss and not dependency.

As to appellant's first contention we think the Legislature, by providing that the damages should inure to

the benefit of the "dependent next of kin, to be distributed in the same manner as the personal property of the deceased . . ." (§ 2-404, Burns' 1933 (Supp.), § 51, Baldwin's Supp. 1937), clearly intended that in order to determine who are next of kin reference should be had to the statute of descent. The statute provides that if an intestate shall die without lawful issue or their descendants alive, one-half of the estate shall go to the father and mother and one-half to the brothers and sisters. § 6-2303, Burns' 1933, § 3292, Baldwin's 1934.

We cannot agree with appellant's contention that when a father emancipates his son, he thereby waives any right to damages under the wrongful death statute. The right of action given by that statute (§ 2-404, Burns' 1933 (Supp.), *supra*) is a new one which exists only by virtue of the statute creating it and accrues on the death of the decedent. *Shipley, Admr.* v. *Daly* (1939), 106 Ind. App. 443, 20 N. E. (2d) 653.

As to appellant's contention numbered 3 above, the amended complaint alleges that the decedent assisted his father, mother and brothers by financial contributions and by purchasing food and clothing for them. We think this is sufficient allegation of dependency to withstand a demurrer.

The allegations of the amended complaint concerning negligence follow:

It is alleged that appellant was engaged in the business of manufacturing, selling and transporting electrical energy and in connection with such business maintained electric lines consisting of wires on poles with cross-arms and insulators; that where the involved accident occurred the lines pass over an unobstructed pass-way used by the public, through a

tree whose branches were permitted to grow so as to touch and press against the wires; that as a result the two wires were pressed together by the branches of the tree, causing one of the wires to break and fall to the ground into the grass adjacent to the pass-way, where the decedent came in contact with it. Then it is alleged that appellant was negligent in the following respects:

"1. In permitting branches of a tree to grow in and around said wires and in such a manner that the force of the wind blowing against said branches would cause said wires to come together and thus burn and fall to the ground at a place where persons, including plaintiff's decedent, could come in contact therewith.

"2. In failing to maintain sufficient tension upon the wires so as to prevent the same from coming together, as heretofore alleged.

"3. In failing to take proper steps to disconnect the current after said wire was broken for more than twenty-two (22) hours when said defendant knew, or by the exercise of reasonable care could have known, the same was broken and thus prevent the escape of electrical current, and at a place where plaintiff's decedent came in contact therewith.

"4. In transmitting electrical current without insulation at a place where the same passed over a commonly used pass-way and where persons lawfully thereon, including plaintiff's decedent, could come in contact therewith, and where plaintiff's decedent did, in fact, come in contact therewith."

Appellant's motion to make more specific had been specifically directed to the allegations of negligence and we must therefore consider the demurrer in the light of the facts stated without the support of conclusions to which the motion was directed.

Appellant insists that under the facts pleaded the decedent was a mere licensee at the time and place of his injury and the appellant owed him no legal duty

except to refrain from willful, wanton or reckless misconduct which was likely to injure him.

We cannot agree with appellant's contention. The pass-way in question was one used by the public at all times. Section 20-304, Burns' 1933, § 10090, Baldwin's 1934, requires that in the transmission and use of electricity of a dangerous voltage, full and complete insulation shall be provided at all points where the public is liable to come into contact with the wire or wires. Appellant argues that isolation of the wires far above the ground constitutes insulation as required by the statute. Assuming that to be true, the appellant would have the duty to use reasonable care to maintain such isolation.

Appellant says that the use of the phrase "could come in contact," in the first and fourth allegations of negligence, charges it with the duties of an insurer. We think the phrase is used in the sense of "liable to come in contact" and is not misleading or harmful.

Appellant says that the third allegation of negligence assumes that appellant had knowledge of the break without support of facts. We do not think it is subject to the criticism urged. The allegation that appellant "knew" is the allegation of an ultimate fact.

We find no error in the overruling of appellant's demurrer to the amended complaint.

Under its assignment that the court erred in overruling its motion for a new trial, appellant first challenges the sufficiency of the facts to show, (1) that decedent was emancipated; (2) the existence of a statutory beneficiary; and (3) actionable negligence. As to the first two points, appellant's contentions go to the applicable law considered by us in determining the correctness of the court's ruling on the demurrer

to the complaint. The evidence is ample to support the allegations of the complaint and is therefore sufficient.

On the question of negligence the evidence most favorable to appellee follows:

On June 10, 1939, and for several years prior thereto, appellant owned, maintained and operated a power line from the City of Martinsville, Indiana, to the town of Brooklyn, Indiana. The power line included a high voltage 33,000 KV circuit consisting of three wires attached to the top cross-arms on 35-foot poles, a distribution circuit of 2,300 volts of two wires 12 inches apart, attached by insulators to cross-arms located about 6 feet below the high voltage wires, and a private telephone circuit of two wires about 4 feet below the distribution circuit. The 2,300-volt wires were 24 feet above the ground. The supply of energy over the distribution circuit was controlled by a fuse in the transformer bank at Brooklyn.

About 4 miles north of Martinsville a lane 16 feet wide extended west from a public highway, known as Blue Bluff Road, to a river. This lane was used by the public for both pedestrian and vehicular traffic to the river. The power line crossed above this lane about one-eighth of a mile west of the public highway. The first pole south of the lane was 34 feet from its center line and the first pole north of the lane was 131 feet from its center line. North of the lane was located an elm tree whose uppermost branches reached the 2,300-volt wires. The Tackett home was located on a hill on the east side of the Blue Bluff Road.

On June 10, 1939, which was Saturday, between six and eight o'clock in the evening there was a severe storm in and around Martinsville and a great deal of lightning, wind and rain. At that time appellant's electric line above described was maintained and oper-

ated by the Northern Indiana Power Company under contract. Between seven and eight o'clock that evening decedent and several other members of the Tackett family, looking from their home, noticed what appeared to be balls of fire playing on the power line at about the point where the line crossed the lane. At about seven o'clock that evening the Northern Indiana Power Company received a call from one of the homes furnished electric current from the 2,300-volt circuit that they were out of service. One of its employees responded to the call and found that the transformer fuse in the service transformer at that home had blown. This was replaced and service was restored and was normal. On the same evening it received another call from another home on this line that they were out of service. Its employees responded to that call and found a fuse blown in the service transformer there which was replaced and the service restored and was normal. On their return they checked the service transformer on a third home, found a fuse blown and replaced it. No further calls or reports of interrupted service were received that evening on the circuit here involved.

On the next morning, Sunday, a call came from a fourth home that had been out of service since Saturday evening but had been unable to report it because their telephone was also out of service. The employees of the Northern Indiana Power Company responded to that call and found a fuse blown in the service transformer and when this was replaced service was restored and was normal. No further calls of any interruption in service were received until about six o'clock p. m. Sunday when the home from which the first call on Saturday night had come, reported that their milking machines were not working. Its employees responded to that call and located a ground in one of the wires

leading to the refrigerator. The refrigerator was disconnected and the milking machines operated. The appellant, or Northern Indiana Power Company, had no other notice or knowledge of any other interruption in the service of its customers on the 2,300-volt circuit and had no notice or knowledge of any broken wire until between two and three o'clock p. m. Monday. Twelve customers on the circuit were not out of service during the entire time.

About one o'clock p. m. on Sunday, June 11, 1939, decedent with two of his brothers and two other persons drove down the lane to the river for fishing. About four o'clock that afternoon decedent left the river, stating that he was going home to change clothes and then he was going to the home of a Mr. Jackson, for whom he was to work on Monday. He was not seen alive after that. On Monday afternoon his body was discovered just south of a hedge fence on the south side of the lane where it is crossed by the power line. One of the 2,300-volt wires had broken 73 feet south of the pole to the north and 92 feet north of the pole to the south. The decedent was holding in his hand the end of the 92-foot length of wire.

There is no evidence that the wind blowing against the branches caused the wires to come together and thus burn and fall to the ground. Neither is there any evidence that because of insufficient tension the wires came together. On the other hand, the evidence is undisputed that had the wires come together the fuse in the transformer bank at Brooklyn would have blown and all customers on the circuit would have been out of service. Since twelve of the sixteen customers had continuous service and the fuse at Brooklyn did not blow it was physically impossible for the wire to have

been broken or burned in two by the two wires coming in contact with each other.

It is also undisputed that the construction and equipment was standard and conformed to the requirements of the National Electric Safety Code recommended by the Federal government; and that isolation of the wires 24 feet above the ground was proper insulation for the particular location.

We need therefore examine the evidence only as it relates to the third charge of negligence. The only deduction from the facts given in the evidence was that the break was caused by lightning which in addition to causing the break blew the fuses at the four homes. The explanation for continued service was, that when the wire broke the two sections fell across the telephone wire below and down to the wet ground; and that the current continued from one section through the telephone wire or wet ground to the other section. There was no device which could give information to appellant or the Northern Indiana Power Company that a wire had broken. When fuses at the individual homes where service had been interrupted were replaced and service thereby became normal again, the only indication was that nothing was wrong with the line. The evidence is clear that appellant did not know that the wire was broken prior to decedent's death nor are we able to discover any evidence which would support a finding that it could have known by the exercise of reasonable care. We must therefore conclude that the evidence is insufficient to establish negligence on the part of appellant.

Other questions presented are not likely to arise on another trial and do not therefore require our consideration.

Judgment reversed with instructions to sustain appellant's motion for a new trial and for further proceedings consistent with this opinion.

Blessing, C. J., not participating.

NOTE.—Reported in 47 N. E. (2d) 851.