STATE OF INDIANA ON RELATION OF SAVERY, ETC. *v.*
CRIMINAL COURT OF MARION COUNTY, DIV. ONE,
MCDONALD, JUDGE, ETC.

[No. 29,329.   Filed November 18, 1955.   Rehearing denied
December 14, 1955.]

634

Cecil Taylor and Charles W. Symmes, of Indianapolis, for relator.

Judge Scott A. McDonald, pro se.

ARTERBURN, J.—This is an original action by the relator, Paul Walcott Savery, asking for a writ of mandate and prohibition against the Judge of the Marion County Criminal Court, Division No. 1, to compel the court to proceed under Acts 1949, ch. 124, §1, p. 328, being §9-3401, Burns' 1942 Repl. (1953 Cum. Supp.), for the determination and adjudication of the relator as a criminal sexual psychopathic person.

On March 31, 1955, the relator was charged by affidavit in two counts with the offense of robbery and

physical injury while in the commission of robbery in the Marion County Criminal Court, Division No. 1. After arraignment the relator pleaded not guilty and also filed a plea of insanity by his counsel. Physicians were appointed under the provisions of the statute for an examination as to his sanity (Acts 1913, ch. 298, §2, p. 774; 1927, ch. 102, §1, p. 268, being §9-1702, Burns' 1942 Replacement), and they filed their report accordingly. On the 26th day of August the relator's counsel filed a verified application with statements of physicians in support of same, requesting the court to hold a hearing for the purpose of declaring the relator a criminal sexual psychopathic person. The court, as shown by the record, overruled this request and denied the petition. It is this action of which the relator complains.

The respondent Judge contends that under the statute in question, although the proceedings are mandatory when requested by the prosecuting attorney, they are discretionary with the court when requested on behalf of the defendant in a criminal case. The act with which we are concerned reads in part as follows:

"Any person over the age of sixteen (16) years who is suffering from a mental disorder and is not insane or feebleminded which mental disorder is coupled with criminal propensities to the commission of sex offenses, is hereby declared to be a criminal sexual psychopathic person." Acts 1949, ch. 124, §1, p. 328, being §9-3401, Burns' 1942 Repl. (1953 Cum Supp.).

Section 9-3403 of the same statute provides that, "when any person is charged with a criminal offense" or has been convicted of such except murder and certain other crimes, the prosecuting attorney or someone on behalf of the defendant may file a petition for the determination of whether such a per-

son so charged or convicted is a criminal sexual psychopathic person.

Section 9-3404 of the same statute provides in part:

"Upon the filing of such statement by the prosecuting attorney the court *shall,* or if filed on behalf of the accused *may,* appoint two (2) physicians to make a personal examination of such alleged criminal sexual psychopathic person who shall file with the court a report in writing of the results of their examination together with their conclusions." (Our italics.)

The statute thereafter provides in general that upon a hearing if the person so charged is found to be a criminal sexual psychopathic person he shall become the ward of the Indiana Council for Mental Health and be confined or paroled under its supervision; that upon the recovery and discharge of the defendant he may not thereafter be tried upon the offense with which he was originally charged at the time he was committed; and that a finding that he was a criminal sexual psychopathic person shall be a bar to his being tried or convicted of any offense pending against him in the court at the time of the filing of the petition for such determination.

It will be observed from the quoted portions that the definition of a criminal sexual psychopathic person under the Indiana act *excludes those who are insane or feebleminded* and the proceedings provided therefor are not applicable to those individuals.

The relator takes the position that although the court is given discretionary power to deny the application when made by the defendant, this discretion was abused in this case since the relator made out a prima facie showing by statements of physicians attached to his application. These statements are taken from the report of the same physicians who made the examination under appointment of the court upon the plea of in-

sanity. These statements were to the effect that "this man must be regarded as and accorded the treatment of a criminal sexual psychopath."

The act with which we are concerned providing for the examination and determination of whether or not persons charged with crimes are criminal sexual psychopaths, has not as its object the giving to such defendants a new defense similar to that of insanity. Such a proceeding may not be used as of right to avoid punishment by one legally sane and responsible for his acts.

The purpose of the proceedings and confinement under the act is primarily to protect society against such persons regardless of criminal guilt. Courts have upheld analogous proceedings for commitment of drug addicts, inebriates, delinquents, dipsomaniacs and similar persons. Through the entire field of legislation dealing with this human wreckage of society, there is a pervading feeling that sexual offenders and similar persons require special treatment since punishment normally is not a deterrent to a repetition of the offense. Institutional treatment offers also better protection to society. Although it is no panacea, it, at least, is a more enlightened approach in search of a better solution of an old social problem. Such proceedings are civil in nature even though they may have their origin or be instituted as a result of criminal proceedings. 25 Indiana L. J. 186.

No question has been raised in this case as to the constitutionality of the act before us. A constitutional question will not be decided, where the cause can be properly disposed of otherwise. It is not necessary to determine that question for a decision in this case. No briefs have been presented on the constitutional issue and, until we can have the benefit of a matter fully briefed on both sides, we re-

serve any decision upon such question. *Roth* v. *Local Union No. 1460 of Retail Clerks Union et al.* (1939), 216 Ind. 363, 24 N. E. 2d 280; *State ex rel.* v. *Wheaton* (1923), 193 Ind. 30, 138 N. E. 820; *Hunt* v. *State* (1917), 186 Ind. 644, 117 N. E. 856; *Inheritance Tax Div.* v. *Estate of Callaway* (1953), 232 Ind. 1, 110 N. E. 2d 903.

Minnesota has an act providing for a procedure for confinement of criminal sexual psychopathic persons, the constitutionality of which has been passed upon by the United States Supreme Court. *Minnesota ex rel. Pearson* v. *Probate Court* (1940), 309 U. S. 270, 60 S. Ct. 523, 126 A. L. R. 530. However, the Minnesota act as contrasted with the Indiana act can be construed to classify under its definition such persons in the category of insane persons. The United States Supreme Court therefore reasoned that such proceedings were in the nature of an insanity inquest and not criminal in character.

The state of Michigan also has an act which provides for a procedure for confinement of criminal sexual psychopathic persons. Under that act only the state may institute such proceedings and petition for a hearing. The Michigan act provides for a jury trial. It is similar to the Indiana act in respect to the fact that it may be instituted in a criminal proceeding, and under it insane and feebleminded persons are excluded from its operation.

The Michigan Supreme Court has held the proceeding to be civil in nature. *People* v. *Chapman* (1942), 301 Mich. 584, 4 N. W. 2d 18.

The state of Illinois likewise has an act similar to the Michigan act in which only the prosecuting attorney may petition for a hearing. The court also held that it was not a criminal proceeding but civil in nature. *The People* v. *Sims* (1943), 382 Ill. 472, 47 N. E. 2d 703.

The state of California also has enacted legislation concerning sexual psychopathic persons involved in crime. The act is very similar to the Indiana act. It provides that any person may file an affidavit and when "it appears by affidavit to the satisfaction of the court that such a person is a sexual psychopath within the meaning of this chapter, the court *may* adjourn the proceeding or suspend the sentence as the case may be, and, thereupon, proceed as provided by this chapter." (Our italics.) §5501 of the Welfare and Institutions Code of California.

In the case of *People* v. *Barnett* (1946), 27 Cal. 2d 649, 166 P. 2d 4, the Supreme Court of the state of California held the trial court abused its discretion in refusing to appoint physicians and hold a hearing in conformity with the statute upon the filing of a proper affidavit by the defendant, making out a prima facie case that he was a sexual psychopath. There were no counter-affidavits filed. The criminal offense pending against the defendant at the time was sodomy.

That court, however, considered and distinguished the case of *People* v. *Haley* (1941), 46 Cal. App. 2d 618, wherein the trial court had refused to grant such a petition upon a prima facie showing made in a case where the defendant was charged with kidnapping.

In the latter case the California Appellate Court held that the statute should be interpreted as applicable only to cases where the crime pending against the defendant was a *sexual offense,* and since kidnapping was not such offense, the defendant could claim no right to a hearing under the act.

The section in the act providing for a hearing "when any person is charged with a crime," was read in connection with prior sections defining sexual psychopathic persons, the wording in the Indiana statutes and the California statutes are similar.

In *People* v. *Haley, supra,* the court said on page 623 :

"The language of section 5501 'if whenever a person is charged with a crime' was intended to mean charged with a crime having some relation to the type of offense referred to in section 5500 . . . .

"A contrary construction of the foregoing provisions would be most illogical in view of the use of the word 'may.' If the legislature had not intended that the nature of the crime should be considered in passing on the allegations of the affidavit of sexual psychopathy, but had intended that the affidavit alone be considered, the words 'must' or 'shall' would have been employed in referring to the action taken by the court."

Again, quoting from the same case on page 622 :

"The court is not ousted of jurisdiction over the criminal proceeding by the mere filing of an affidavit asserting that the accused is a sexual psychopath. It is not mandatory that the court shall adjourn the criminal proceeding when the affidavit is filed. The word 'may,' as it is used in that section should not be construed as a mandatory direction to the court regardless of the sufficiency of the showing. It is merely discretionary. Unless there is an abuse of that discretion the ruling of the court in that regard may not be disturbed on appeal."

The reasoning of the California Court with reference to the applicability of the proceedings to cases only involving sexual offense seems a rational and logical construction of the statute. In the case before us the charge against the relator is robbery and infliction of physical injury in the commission of robbery. There is here no charge of any sexual offense. This construction of the Indiana act is more compelling by reason of the limitations on the subject matter fixed by the title to the act.

In reviewing the cases where legislation similar to that in Indiana has been questioned, we find that such

proceedings (for the confinement of a sexual psychopathic person) have been held: (1) To be civil in nature, rather than criminal, although originating in criminal proceedings; (2) by interpretation to be limited to pending criminal cases in which a sex offense is charged.

We are not impressed with the reasoning of the Supreme Court of California, in *People* v. *Barnett, supra,* which strictly limits the discretion of the trial court in refusing to hold a hearing on the request of the defendant where affidavits are presented, making out a prima facie case. As we understand relator's contention it is the same here as that of the defendant in the above California case. Relator's contention amounts to saying that the trial court may be forced into a hearing on counter-affidavits or on oral or written evidence, where the defendant makes out a prima facie showing by affidavit that he is a criminal sexual psychopathic person. We do not believe the statute intends that there should be a mandatory hearing upon a prima facie showing by a defendant.

The Indiana statute says when the request is made by the prosecuting attorney "the court *shall* or if filed on behalf of the accused *may,* appoint two qualified physicians to make a personal examination of such alleged criminal sexual psychopathic person." (Our italics.)

The juxtaposition of the clauses with the words "shall" and "may" is significant. A difference is intended. Otherwise, the legislature might more conveniently have followed the wording of the statute for proceedings under a plea of insanity, where it is stated, "the court *shall* appoint two [2], or three [3], competent disinterested physicians to examine the defendant." (Our italics.) §9-1702, Burns' 1942 Replacement, *supra.* Very broad discretion is intended

to be given the trial court and prosecuting attorney in the proceedings here in question, since no statutory limitations whatever are placed thereon.

We are not dealing here with a discretion in the sense used in granting or denying equitable relief or other similar remedies, where rules and limits in the exercise of judicial discretion have been formulated and defined by usage and practice. Discretionary action of a trial court is always reviewable in such cases, if there has been a subversion of a rule or principle which confers a right on a party. 5 C. J. S., Appeal and Error, §1583, pp. 472-475; 3 Am. Jur., Appeal and Error, §959, p. 525; Bowers, Judicial Discretion, §10.

However, where as in this case the law grants discretionary action without placing any statutory or constitutional limits on the use of same, the intent is to give the broadest sphere of action.

Discretion of this type is uncontrolled and beyond the review of an appellate court so long as it is not arbitrary, capricious or influenced by fraud. Courts on review will not interfere unless there is a positive showing that fraud, prejudice or some other capricious action influenced the discretion exercised. *McFarlan* v. *Fowler Bank City Trust Co.* (1937), 214 Ind. 10, 12 N. E. 2d 752; *Public Service Co.* v. *Tackett, Admr.* (1943), 113 Ind. App. 307, 47 N. E. 2d 851. As to how absolute the discretion granted by statute to judicial officer may be (as in the case of the prosecuting attorney), see *Lynn* v. *State* (1934), 207 Ind. 393, 193 N. E. 380; *State ex rel. Williams* v. *Ellis* (1915), 184 Ind. 307, 112 N. E. 98. Opinions of Attorney General 1938, p. 78.

The court, in the exercise of unrestricted discretion, may be influenced by public policy and factors outside the actual evidence presented.

As stated in the case of *People* v. *Haley, supra,* the court may take into consideration the character of the original criminal offense charged. In this case the court may have taken into consideration the fact that the defendant has filed a plea of insanity, since the act states that it shall not be applicable to insane persons.

For each of the reasons given the writ should be denied, namely:

1. The criminal offense charged here, not being a sexual offense, such proceedings (to determine whether or not the relator is a criminal sexual psychopath) are not proper therein.

2. Since the statute places no restriction on the trial court's denial of a request on behalf of defendant for a hearing for such determination, the action of the trial court will not be reviewed and the defendant may not force the trial court to grant such a hearing. The trial court could take into consideration the plea of insanity by the defendant in exercising its discretion.

The temporary writ heretofore issued is dissolved and the permanent writ denied.

Bobbitt, Achor and Landis, JJ., concur.

Emmert, C. J., concurs in result with separate opinion.

CONCURRING OPINION

EMMERT, C. J.—Although this court has nothing to do with legislative policy which relieves criminal sexual psychopathic persons from punishment under the criminal statutes of this state, Chapter 124 of the 1949 Acts (§§9-3401 to 9-3412, Burns' 1942 Replacement, Supp.), does present so many changes in the existing laws with reference to the punishment of those who are not insane, that a critical analysis should be made of the various provisions to determine whether the act offends the constitutional limitations placed upon legislative action.

Many grave offenses against persons and property may be a result of a criminal sexual psychopathic mind. Without attempting to make a complete list, it is sufficient to note the following: Arson, mayhem, burglary, robbery, as is the charge in the case under consideration, automobile banditry, kidnapping, larceny, rape, incest, adultery and fornication, seduction, prostitution, sodomy, contributing to delinquency and malicious trespass. Under the definition in §9-3401, Burns' 1942 Replacement, Supp., such a psychopathic person may know and appreciate that his acts are vicious and criminal and dangerous to life and person, and he may have sufficient willpower to refrain from committing such antisocial acts, yet under the extraordinary provisions of the act it is possible for him to escape prosecution for the crime, or even after conviction he may never be sentenced, for a finding that he is a criminal sexual psychopathic person grants him a pardon from the criminal offense.

In this case the respondents in reality represent the State of Indiana, and although respondents have not asserted the act is unconstitutional, the state is not in a position to waive the unconstitutionality of any provision. The fact that an issue is not properly raised does not prevent us from judicially noticing our Constitution and the Fourteenth Amendment under the well recognized rule that this court, within its discretion, may consider errors not properly presented. *Big Creek Stone Co.* v. *Seward* (1895), 144 Ind. 205, 42 N. E. 464, 43 N. E. 5; *C. C. & St. L. Ry. Co.* v. *Moore* (1907), 170 Ind. 328, 82 N. E. 52, 84 N. E. 540; *Martin* v. *Martin* (1881), 74 Ind. 207, 210, 211; *Thompson* v. *State* (1946), 224 Ind. 290, 66 N. E. 2d 597; *White* v. *White* (1935), 208 Ind. 314, 317, 194 N. E. 355, 196 N. E. 95, 96; *Mack* v. *State* (1932), 203 Ind. 355, 362,

180 N. E. 279; *Travelers' Ins. Co.* v. *Prairie School Township et al.* (1898), 151 Ind. 36, 41, 49 N. E. 1, 51 N. E. 100. See also *Fisher* v. *U. S.* (1946), 328 U. S. 463, 66 S. Ct. 1318, 90 L. Ed. 1382. It is in the imperative public interest that the constitutionality of this act be determined at the first opportunity. If the act should be declared unconstitutional in some subsequent case before this court, many persons may be committed to the Indiana Council for Mental Health and confined in state institutions when they should have been in some penal institution, or may have been acquitted by a court or jury. A subsequent opinion by this court holding the act unconstitutional would make the commitments at least voidable if not absolutely void, thus raising many complicated legal problems which should be settled now.

Section 1 of the act defining a criminal sexual psychopathic person makes it clear the act was intended to exclude insane or feebleminded persons, yet it applies to those with mental disorders who have criminal propensities to the commission of sex offenses. Section 9-3401, Burns' 1942 Replacement, Supp. Section 3 of the same act, §9-3403, Burns' 1942 Replacement, Supp., states the act shall apply to any person "charged with a criminal offense, except the crime of murder or manslaughter, or rape on a female child under the age of twelve." The issue is presented to the trial court by a statement in writing "tending to show that such person is a criminal sexual psychopathic person," filed either by the prosecuting attorney, or by someone on behalf of the defendant.

The unusual part of Section 3 is that the issue can be raised as soon as the charge is filed, or after the defendant has been convicted or has pleaded guilty, so long as judgment has not been entered upon the plea or conviction.

Section 4, §9-3404, Burns' 1942 Replacement, Supp., places a mandatory duty upon the court to appoint two physicians if the statement is made by the prosecuting attorney, but gives the court a discretionary power to appoint the physicians if the statement is filed in behalf of the defendant. This section further makes it clear that unless the two physicians agree in their written reports to the court that the defendant is a criminal sexual psychopathic person, the issue cannot be tried and determined. Section 5, §9-3405, Burns' 1942 Replacement, Supp., provides for notice and hearing by the court without a jury, and a commitment to the Indiana Council for Mental Health if the defendant is found to be a criminal sexual psychopathic person.

Section 9 of the act, §9-3409, Burns' 1942 Replacement, Supp., provides as follows:

"No person who is found in such original hearing to be a criminal sexual psychopathic person, and such finding having become final, may thereafter be tried or sentenced upon the offense with which he originally stood charged, or convicted, in the committing court at the time of the filing of the original petition."

It is impossible to construe the statement alleging the defendant is a criminal sexual psychopathic person as a defense to a criminal charge as is the case under §9-1132 and §9-1701, Burns' 1942 Replacement. It cannot be a defense to the action, because it puts it within the power of the prosecuting attorney, the court and the two examining physicians to say whether the issue shall be tried. That denial of the defendant of the right to present such defense would certainly be a denial of due process of law under the Fourteenth Amendment and due course of law under §12 of Art. I of the Indiana Constitution. Moreover, the statement can be filed after conviction or a plea of guilty, which

makes it perfectly clear the matter is not one of defense to the action. Nor is the defendant given the right to present evidence that he is in fact a criminal sexual psychopathic person, even if he obtains the most eminent and distinguished psychiatrists in the land as his witnesses, if the two physicians appointed by the court fail to agree he is such a psychopathic person.

Since the issue is not one of defense, and since finding that the defendant is such a psychopathic person brings into operation §9 of the act which prohibits a trial, or sentence on the original charge even after conviction, the act is clearly unconstitutional in that it gives the court the power to grant a pardon after conviction, in violation of §17 of Art. V of our Constitution which vests the sole power of pardon in the governor. We cannot construe the act as one granting amnesty. 39 Am. Jur., p. 525, §10.[1] There have been various definitions as to what constitutes pardon. In substance "a pardon is a declaration on record by the chief magistrate of a state or country that a person named is relieved from the legal consequences of a specific crime." 39 Am. Jur. 523. See also *Biddle* v. *Perovich* (1927), 274 U. S. 480, 47 S. Ct. 664, 71 L. Ed. 1161, 52 A. L. R. 832. But under the act the Governor does not declare of record the defendant is to be relieved from the legal consequences of his specific crime charged, hence the act's unconstitutionality.

Sections 3 and 4 also offend §23 of Art. I of our Bill of Rights, by granting a privilege and immunity

---

1. "Amnesty overlooks offense; pardon remits punishment. The first is usually addressed to crimes against the sovereignty of the state, that is, to political offenses, with respect to which forgiveness is deemed more expedient for the public welfare than prosecution and punishment. The second condones infractions of the peace of the state. Amnesty is usually general, addressed to classes or even communities—a legislative act, or under legislation, constitutional or statutory—the act of the supreme magistrate." 39 Am. Jur. p. 525, §10.

to one defendant not granted on equal terms to other defendants. Many different crimes may be the result of a criminal sexual psychopathic mind. For instance, two defendants who are in fact criminal sexual psychopathic persons may each be charged with arson, which can be the product of a sexual psychopathic mind. W. Norwood East, Sexual Offenders—A British View, 55 Yale Law JI. 527, 551. In one prosecution the prosecuting attorney may file a statement that the defendant is a sexual psychopathic person, in which event the court must appoint two physicians, who may both confirm the statement. But in the other case, the prosecuting attorney may refuse to file a statement, and the court may refuse to appoint the two physicians on the statement of the defendant, yet both defendants are sadists, and one obtains a privilege and immunity not afforded the other. If a statute should declare that a convicted defendant had the right of appeal if the prosecuting attorney consented, but no right of appeal on a defendant's own motion without the consent of the prosecuting attorney, such a statute would clearly be a denial of equal protection of the laws under the Fourteenth Amendment. See *Dowd, Warden* v. *Cook* (1951), 340 U. S. 206, 71 S. Ct. 262, 95 L. Ed. 215, 19 A. L. R. 2d 784.

The fact that trial by jury is denied on the issue of determining whether the defendant is a criminal sexual psychopathic person does not make the act unconstitutional. The Legislature attempted to recognize that a psychopathic person is a mental defective. Under the ancient jurisdiction of equity, mental defectives were within the control of the chancellor representing the Crown as *parens patriae*. *McCord, Executor* v. *Ochiltree* (1846), 8 Blackf. 15, 17, 20.[2] See also *Dinson* v.

---

2. "Our construction, therefore, is, that the constitution does not forbid the establishment of Courts of Chancery with power,

*Drosta* (1907), 39 Ind. App. 432, 80 N. E. 32; *State ex rel. Johnson* v. *White Circuit Ct.* (1948), 225 Ind. 602, 77 N. E. 2d 298.

This court is not in a position to say the General Assembly would have passed the act had they known that §9, granting the power to pardon, was unconstitutional, nor is the remainder of the act workable without the jurisdictional provisions concerning the filing of the statement presenting the issue to the court. In the absence of such procedure the entire act becomes unworkable. Where certain provisions of an act are unconstitutional, "and the remainder of the act is not complete and not possible of performance, the whole act is void and invalid. *Kelso* v. *Cook* (1916), 184 Ind. 173, 181, 110 N. E. 987, Ann. Cas. 1918E 68." *Keane* v. *Remy* (1929), 201 Ind. 286, 295, 168 N. E. 10.

Since the entire act is unconstitutional and void, the trial judge properly refused to act on the relator's petition.

NOTE.—Reported in 130 N. E. 2d 128.

---

in addition to the usual jurisdiction of a Court of equity, of taking cognizance of and protecting the persons, rights, and property of infants, idiots, and lunatics, and of superintending and enforcing charities." *McCord, Executor* v. *Ochiltree* (1846), 8 Blackf. 15, 20.