NOVAK, ADMINISTRATRIX, ETC. *v.* CHICAGO & CALUMET
TRANSIT COMPANY, A CORPORATION, ET AL.

[No. 29,440.   Filed June 7, 1956.]

490

*Alton G. Meyer,* of Valparaiso, *Samuel Ruff,* of East Chicago, and *George Cohen,* of Gary, for appellant.

*Owen W. Crumpacker, Edmund A. Schroer, Theodore M. Gemberling,* and *Crumpacker & Schroer,* of Hammond, for appellee.

ACHOR, J.—This is an action for wrongful death. The court directed a verdict for appellee at the conclusion of appellant's evidence. This action was assigned as error in appellant's motion for new trial and is relied upon as grounds for reversal in this appeal.

Basically three major questions are presented for our consideration. The first is: Was there some evidence of negligence on the part of appellant sufficient to necessitate taking the case to the jury? The second is: Was decedent guilty of contributory negligence as a matter of law? The third is: Was there evidence of such expenses or of such dependency as contemplated by the wrongful death statute sufficient to take the case to the jury?

The evidence on the issues of negligence and contributory negligence is as follows: Hohman Street runs north and south and Sibley Street runs east and west, intersecting in the heart of downtown Hammond. Decedent was standing at the northeast corner of this intersection prior to crossing to the southeast thereof. At the time appellee's bus was standing in Hohman Street at the north margin of the intersection intending to make a left turn onto Sibley Street and pick up passengers at the curb just east of the intersection. Both the decedent and the bus had stopped for the red light and were waiting for the green. Both started south on

the green light, the bus swinging left on an arc. The bus stopped "at or in the crosswalk." Decedent also stopped and then continued across the street by going around the bus, to the east of it. The bus then started up again and, in doing so, the right front portion of the bus struck and killed the decedent who, at the time, was at a point near the curb, east of the east line of the crosswalk, but "directly in front" of a witness who was "five or six feet from the (southeast) corner."

Appellee contends that there is no evidence of negligence on the part of appellee because of the fact that decedent was outside the crosswalk when struck and, furthermore, that because of this fact he was guilty of contributory negligence as a matter of law. We do not concur in this contention. From the evidence and the reasonable inferences drawn therefrom the jury might reasonably have believed that the decedent started across the street in the crosswalk since he was "at the corner" when he started and that he proceeded across the street in the crosswalk since he walked "south" from the corner. The jury might also have believed that, in violation of the statute,[1] the bus failed to yield the right-of-way to decedent, a "pedestrian lawfully within the crosswalk," but instead obstructed the crosswalk by stopping "at or on" it and thus making it necessary for decedent to walk out of

---

[1] "Vehicular traffic facing the signal, except when prohibited under section 97 (§47-2111), may proceed straight through or turn right or left, unless a sign at such place prohibits either such turn. But vehicular traffic shall yield right-of-way to other vehicles and to pedestrians lawfully within a crosswalk at the intersection at the time such signal is exhibited.

"Pedestrians facing the signal may proceed across the roadway within any marked or unmarked crosswalk."

§ 47-1905 (a) 1 and 2, Burns' 1952 Repl. (Acts 1939, ch. 48, § 34, p. 289; 1947, ch. 338, § 5, p. 1336.)

and slightly to the east thereof in order to go "around the bus." Certainly if such inferences can be drawn from the evidence we cannot say that there was no evidence of negligence on the part of appellee or that decedent was guilty of contributory negligence as a matter of law. Therefore, as to the issues of negligence and contributory negligence there was sufficient evidence to take the case to the jury.[2]

We next consider whether there was evidence of damages, for which appellant was authorized to maintain this action, sufficient to necessitate taking the case to the jury. Admittedly there was no evidence as to any of the expenses incident to decedent's last sickness and burial or the administration of his estate, for which recovery is authorized by the wrongful death statute, §2-404, Burns' 1946 Repl. (1955 Supp.) (Acts 1949, ch. 42, §1, p. 126; 1951, ch. 140, §1, p. 367). Therefore, any judgment for these items would have to be based upon mere speculation.

Appellee also contends that the evidence most favorable to appellant fails to disclose that there were dependent next of kin for whom appellant was authorized to maintain this action under the above statute. In support of its position appellee cites the fact that under the common law there was no legal obligation for an adult child to support its parent. *New York Central Railroad Company* v. *Johnson* (1955), 234 Ind. 457, 127 N. E. 2d 603, 606, 607. Neither was there any legal obligation for a parent to support an adult able bodied child. *Blanton* v. *Wheeler & Howes Co.* (1916), 91 Conn. 226, 99 A. 494; *Gherardi* v. *Connecticut Co.* (1918), 92 Conn. 454, 103 A. 668. Appellee asserts that §2-204, *supra,* does not create any different standards of dependency than that which existed under the common

---

[2] *Neuwelt* v. *Roush* (1949), 119 Ind. App. 481, 85 N. E. 2d 506.

law, and that because of the fact that decedent's next of kin were adult able bodied daughters married to employed husbands they were not dependent next of kin, either under the common law or within the express terms of the statute.

However, the rule is now well established that proof of dependency imposed by law is not necessary to recovery under the statute. It is sufficient if such ■ dependency exists in fact. This court was confronted by the same issue in the recent case of *New York Central Railroad Company* v. *Johnson, supra.* In that case this court stated:

> "It is not necessary for the decedent to have been under a legal obligation to support the next of kin. . . .
>
> "Appellant contends that in the 1937 amendment to the Wrongful Death Act of 1933 the addition of the words 'or dependent next of kin,' restricted the right to recovery by a parent for the death of an adult child. Generally an amendment of an act which changes the language of a prior act does indicate a legislative intention that the meaning be changed. However, we are of the opinion that this change in the Wrongful Death Act no more than declared what our prior decisions had been on the right of recovery under such circumstances. . . ."

Also, it has been held in an action for wrongful death of an emancipated minor, allegations that decedent assisted his father, mother, and brothers by financial ■ cial contributions and by purchasing food and clothing for them, which contributions were needed, constituted sufficient allegations of dependency to withstand a demurrer. *Public Service Co.* v. *Tackett* (1943), 113 Ind. App. 307, 47 N. E. 2d 851.

Was there any evidence or probative value in the

record upon which to submit to the jury the issue of dependency, either in law or in fact? Upon this subject decedent's daughter, Evelyn Novak, testified as follows:

". . . We lived with him from 1946 until the time of his death. My husband did not have steady employment from 1946 until my father's death (December 31, 1949). He has been on and off from work, and is that way now. He has seen many doctors. In fact, most of his pay check went for medical bills.

"This home we moved into with my father was purchased by him and my husband under the GI Bill of Rights. My father had selected the home. Because of the many medical bills that my husband had as a result of his sickness, my father helped pay for the home, made monthly payments of $25 on the GI loan.

"My father also bought the food, and clothed my children. He helped fix up the home and gave my husband money to pay doctor bills. . . .

"My father made the monthly payments on this home from 1946 until the time of his death; otherwise we would have been out in the street. We were living in a two-room flat prior to that time.

"My father contributed to the support of the household. He paid lights, the gas, just about everything. He did that up to the time of his death. . . ."

This testimony, if believed, was sufficient to sustain a finding of dependency, for it evidenced an actual need for support on the part of a next to kin of decedent, coupled with substantial contributions by the deceased, which was relied upon and used by the next of kin to supply that need.

But appellee contends that the above evidence of dependency is in conflict with and contrary to the controlling weight of the evidence. Therefore, appellee

contends that it was the duty of the court in compliance with the constitutional provision that justice be administered speedily and without delay, to terminate the litigation and thus avoid needless expense and delay for both the state and the litigants. Also appellee contends that in event the case were submitted to the jury, appellee would, under the facts presented, be unjustifiably subjected to the hazard of a verdict based upon prejudice or sympathy more than fact, from which verdict it would have no effective recourse. However, such rationalization is not a test which can be applied in directing a verdict for a defendant.

As stated in the case of *Callahan* v. *New York Central Railroad Company* (1955), 125 Ind. App. 631, 125 N. E. 2d 263, 265:

". . . The general rule now recognized is that a peremptory instruction may be given when there is a total absence of evidence or legitimate inferences in favor of the plaintiff upon an essential issue or where the evidence is without conflict and is susceptible of but one inference and that inference is in favor of the defendant. *Whitaker* v. *Borntrager* (1954), 233 Ind. 678, 122 N. E. 2d 734, and cases cited. It is a well-recognized rule in determining whether a peremptory instruction should be given, the court must accept as true all facts which the evidence tends to prove and draw against the party requesting such instruction, all inferences which the jury might reasonably draw. *Holtz* v. *Elgin, etc., Ry. Co.* (1951), 121 Ind. App. 175, 98 N. E. 2d 245; *Chacker* v. *Marcus* (1949), (R. D. 1950), 119 Ind. App. 672, 86 N. E. 2d 708, 89 N. E. 2d 455; *Whitaker v. Borntrager, supra.* Likewise, when there is some evidence or legitimate inferences supporting each material allegation of the complaint, the court will not weigh the conflicting evidence or inferences but will consider only the evidence and inferences that are most favorable to the party against whom the peremptory verdict is directed. *Jackson Hill Coal &*

*Coke Co.* v. *Bales* (1915), 183 Ind. 276, 108 N. E. 962; *Whitaker* v. *Borntrager, supra.*"

The rule above stated is grounded upon the fact that Article 1, §20 of the Constitution of Indiana guarantees that, "In all civil cases, the right of trial by jury shall remain inviolate." Therefore, if there is any evidence of probative value in support of the necessary issues drawn in the case, it is the constitutional right of the complaining party, in cases triable by jury, to have a jury determine the credibility of the witnesses and the weight that shall be given the evidence and to decide the facts accordingly. But this does not mean that a defendant is without recourse against a verdict which is not sustained by the clear weight of the evidence. In such an event it is the duty of the trial judge, who also saw the witnesses and heard the evidence from their lips, on proper motion to order a new trial of the cause. This is a duty which the trial judge should exercise with careful deliberation. However, in every case where it does appear, after considering the conflicts in the testimony and weighing the evidence, that the verdict is against the clear preponderance of the evidence, it is the imperative duty of the trial judge to exercise this prerogative of his office with "firmness for the right," and order a new trial.

We have stated that "Justice is blind"—and this must be true as related to the station of litigants who present themselves before the court—but this slogan is not so intended and cannot apply to a trial judge who is confronted with a verdict which is contrary to the clear weight of the evidence. It is the duty of the trial court to recognize and relieve parties-defendants of such unjust verdicts by ordering a new trial. The signal importance of this duty is emphasized by the fact that when the trial court fails to see and measure up to this

responsibility the party offended is shouldered with an injustice from which he, under our system of jurisprudence, has no appeal, for this court, which does not have the opportunity of observing the demeanor of witnesses upon the witness stand, cannot assume the responsibility of determining the credibility of the witnesses or of weighing the evidence in the light of the conflict in their testimony.

Thus it is that a complaining party, whose case is supported by some evidence of probative value upon every material issue, is given the benefit of his constitutional guarantee to have the right which he asserts finally affirmed or denied by a qualified and impartial jury. Thus also it is that a party-defendant is protected against the errors of a jury by the trial judge, whose duty it is to review the entire proceedings in the cause, and, in the light of his greater experience and understanding of the law, either affirm or reject the verdict of the jury.

Admittedly such procedure occasionally results in seemingly needless delay and expense to the litigants. However, such procedure is an inherent consequence of our democratic way of life. Although it might occasionally appear to be a weakness of a constitutional democracy that its wheels of justice grind more slowly than in other forms of government, it is to the everlasting acclaim of our society that for every man these same wheels of justice grind exceedingly fine.

Judgment reversed, with instructions to sustain appellant's motion for new trial.

Landis, C. J., Arterburn, Bobbitt and Emmert, JJ., concur.

NOTE.—Reported in 135 N. E. 2d 1.