## MOORE *v.* BERRY REFINING COMPANY ET AL.

[No. 368A50.  Filed June 27, 1969.  Rehearing denied July 23, 1969.
Transfer denied November 17, 1969.]

*Vance M. Waggoner,* of Rushville, *Robert A. Lucas,* of Gary, and *Lucas, Clifford & Wildermuth,* of counsel, of Gary, for appellant.

*Charles G. Bomberger, James B. Moran, Friedrich, Bomberger, Tweedle & O'Connor,* of counsel, of Hammond, and *Bell, Boyd, Lloyd, Haddad & Burns,* of counsel, of Chicago, for appellees.

SHARP, J.—The Appellant, Doxie Moore, brought this action below for damages for breach of an oral contract of employment and for quantum meruit for the reasonable value of services rendered.  The Appellant alleged that the Appellees

were liable to him for commissions earned for the sale of asphalt during the "sales year" of 1964-1965. The Appellee contended in part that no contract of employment existed and that therefore no liability could attach by reason of its going out of business and ceasing all operations connected with the production of asphalt.

The Appellant, Doxie Moore, was a commission salesman for Berry Refining Company receiving a variable commission on asphalt delivered by that company. He promoted the sale of asphalt from 1957 to April 1, 1965, during which time, by service, entertainment and favors, he developed personal relationships with a number of contractors. The evidence most favorable to Appellee also reveals that his commissions were paid solely on the basis of asphalt delivered.

In 1965 Berry Refining Company ceased operation for financial reasons and no asphalt was delivered that year. The refinery equipment was sold for scrap and all business ended. The Appellant was paid no commissions during 1965 for this reason and no asphalt was sold and delivered.

Trial was by jury and a verdict for the Appellant in the amount of $49,000 was returned. The Appellees then filed a Motion for New Trial containing numerous specifications of error which stated:

"1. The verdict of the jury is not sustained by sufficient evidence.

"MEMORANDUM

"Plaintiff seeks to recover commissions for sales of defendants' asphalt for the year 1965. His earnings were to be based entirely upon sales commissions with no reimbursement by the defendants for promotional expense. There is no evidence of any implied agreement to pay commissions except upon the completion of sales by delivery of asphalt and there is no evidence of any completed sales of defendants' products by the plaintiff during that year; on the contrary, the uncontradicted evidence is that no specific orders were received by the defendants and no sales or deliveries were made in that year, the defendants having closed their refinery on April 30, 1965, for economic reasons.

"Documentary evidence and oral testimony establish only that sales were anticipated for 1965 in undetermined amounts but none were consummated. There is no evidence upon which to compute commissions or to award damages, except by pure speculation as to what might have been earned by the plaintiff if there had been completed sales.

"The only specific dollar evidence related to 1965 is that plaintiff expended $2850.16 in promotional activities with potential customers, but by his own testimony such expense was not reimbursable from the defendants.

"2. The verdict of the jury is contrary to law.

### "MEMORANDUM

"(1)   It is not sustained by sufficient evidence.

"(2)   The jury was permitted to speculate and guess as to what commissions plaintiff might have earned had there been any completed sales in 1965.

"(3)   Plaintiff was a commission agent whose agency was terminable at will. Defendants had no obligation to stay in business in order to deliver asphalt and thus enable plaintiff to earn commissions.

"(4)   An offer for a unilateral contract may be revoked at any time prior to acceptance (by completing sales) and it was so revoked by the defendants in 1965 when the refinery was closed for economic reasons and plaintiff was so notified.

"3. Error in the assessment of the amount of recovery, in that the amount is too large.

"4. The damages assessed are excessive.

"5. The Court erred in overruling defendants' motion, made at the close of all the evidence, to instruct the jury to return a verdict for the defendants.

"6. Error of law occurring at the trial as follows:

"(a)   The Court erred in admitting in evidence, over the objection of the defendants, plaintiff's Exhibit 26, which is a letter to Edward Connelly from J. D. MacDonald, Vice President of Berry Refining Company, stating that asphalt requirements for the 1965 season will be made upon a negotiated price, which objection and the ruling of the Court thereon are in the following words:

"OBJECTION: We object to Plaintiff's Exhibit 26; it is testified this is a confirmation of a sale of asphalt and otherwise it is merely a discussion of what they hoped for

in the future, something to negotiate, the price, on the next year, and in no sense is a confirmation of sale.

"RULING: Objection overruled and Plaintiff's Exhibit 26 is allowed and received in evidence.

"(b)  The Court erred in admitting in evidence, over the objection of the defendants, plaintiff's Exhibit 25, which is a letter to the plaintiff from Edward C. Levy Company, stating that they expect plaintiff to take care of their asphalt needs in the 1965 season, which objection and the ruling of the Court thereon are in the following words:

"OBJECTION: Same objection, Your Honor. There is no showing of any sale, just an expectation, which might occur the following year.

"For same objection see Specification 6(A).

"RULING: Objection overruled and Plaintiff's Exhibit 25 allowed and received in evidence.

"(c)  The Court erred in admitting in evidence, over the objection of the defendants, plaintiff's Exhibit 23, which is a notice to bidders from the DeKalb County Highway Engineer for 800,000 gallons or less of emulsified asphalt, which objection and the ruling of the Court thereon are in the following words:

"OBJECTION: Our objection is on the face of it there is no relevancy to the document. It is just a form legal notice from DeKalb County for annual bid on various materials. We have no evidence other than a representation by the witness that any acceptance of a bid or a bid put in. We certainly have no evidence of a sale during 1965 to DeKalb County.

"RULING: With that explanation, objection overruled and Plaintiff's Exhibit 23 is received and allowed in evidence.

"(d)  The Court erred in admitting in evidence, over the objection of the defendants, plaintiff's Exhibit 24, which is a letter to the plaintiff from Charles T. Miser, DeKalb County Highway Engineer, estimating a 1965 increase in the purchase of bituminous materials, which objection and the ruling of the Court thereon are in the following words:

"OBJECTION: Defendants object to this offered exhibit for the reason it is not a confirmation proof of any sale of asphalt. It refers to an anticipation of increase of material to be ordered when purchased in the Year 1965. Nothing specific as to amount, no request for delivery and no price.

"RULING: Objection overruled. Plaintiff's Exhibit 24 allowed and received in evidence.

"(e)   The Court erred in admitting in evidence, over the objection of the defendants, plaintiff's Exhibit 28, which is a letter to the plaintiff from Mohr Construction Company, Inc. stating he can expect his usual share of asphalt business in 1965, which objection and the ruling of the Court thereon are in the following words:

"OBJECTION: Defendants renew their objection, same as made to 24, namely it does not prove sales, merely expectation of resuming business when he recovered." (for same objection see Specification 6D)

"RULING: Objection overruled. Plaintiff's Exhibit 28 allowed and received in evidence.

"(f)   The Court erred in admitting in evidence, over the objection of the defendants, plaintiff's Exhibit 27, which is a letter from United Black Top Pavers, Inc. to the plaintiff stating that they expect to purchase as much if not more from him in 1965, which objection and the ruling of the Court thereon are in the following words:

"OBJECTION: Same objection, Your Honor, as to 28. The best evidence of the sale is not an expectation letter but a sales order itself.

"RULING: Objection overruled and Plaintiff's Exhibit 27 received and allowed in evidence.

"(g)   The Court erred in admitting in evidence, over the objection of the defendants, plaintiff's Exhibit 29, which is a letter from Indiana Highway Materials, Inc. to the plaintiff stating that he could expect a lot of business from them in 1965, which objection and ruling of the Court thereon are in the following words:

"OBJECTION: Same objection as well as additional objection. This is a letter, probably written, according to this date, well after the date when Mr. Moore was notified that the refinery was shutting down.

(For same objection see Specification 6F.)

"RULING: Overruled. Plaintiff's Exhibit 29 allowed and received in evidence.

"(h)   The Court erred in overruling the objection of defendants to the following question propounded during the direct examination of the plaintiff, a witness called in his own behalf, and in admitting the answer thereto in evidence, which question, objection, answer, and the ruling of the Court thereon, are in the following words:

"QUESTION: Now what is the fact as to whether or not you expended any monies of your own on promotion?

"OBJECTION: It is immaterial because the promotion expense was his own and we are not liable to pay that.

"RULING: Leading up to it. Overruled.

"(i)    The Court erred in refusing to give to the jury at the request of the defendants, each of defendants' written and tendered instructions numbered 1, 4, 5, 7, 8, and 10.

"(j)    The Court erred in giving to the jury at the request of the plaintiff each of plaintiff's tendered instructions numbered 4, 6, 7, 8, 9, 10, 14, 15, and 18, and to the giving of each of which instructions the defendants duly objected in writing within the proper time.

"7.    The Court erred in overruling defendants' motion for summary judgment.

"8.    The Court erred in overruling defendants' demurrer to plaintiff's complaint."

The trial court granted the Motion for New Trial on January 3, 1968, the entry reading as follows:

"This cause having heretofore been submitted to Court on Defendants' Motion for a New Trial and Parties' briefs considered and oral argument of Counsel heard and cause taken under advisement and the Court now being duly advised in the premises finds that under Specifications Numbers 1, 2, 3, 4 and 6 of the Defendants' Motion for a New Trial, the Court, after weighing all of the evidence in this cause is of the opinion that the verdict of the Jury is against the clear preponderance of the evidence and that such preponderance is in favor of the Defendants and against the Plaintiff and that the verdict is contrary to law. The Court now sustains said Defendants' Motion for a New Trial and grants the Defendants a New Trial."

Because of the many sub-specifications in the Motion for New Trial this court, upon an examination of the appeal, found it impossible to properly dispose of the appeal without a statement by the trial judge as to his specific reasons for granting a new trial. On April 28, 1969, an order mandating such a concise and specific statement was entered and on May 26, 1969, the trial clerk of the Lake Circuit Court transmitted

that trial court's memorandum of reasons for sustaining the Motion for New Trial to the Clerk of this Court.

In *Bailey* v. *Kain*, 135 Ind. App. 657, 192 N. E. 2d 486 (1963) this court had before it a very similar case. We reaffirmed in that case that if any one of the reasons given for sustaining the Motion for New Trial was valid, the lower court must be affirmed. See Wiltrout, Indiana Practice, § 1785, and *State Farm Mutual Automobile Insurance Co.* v. *Estes*, 142 Ind. App. 151, 233 N. E. 2d 253 (1968), trans. den. 237 N. E. 2d 257. That case also solidified the standards used by this court in examining appeals from the granting of a Motion for New Trial. This court should not reverse a lower court unless the record clearly reveals that (1) the trial court abused its judicial discretion (2) a flagrant injustice has been done the Appellant, or (3) a very strong case for relief from the trial court's ordering a new trial has been made by the Appellant. *Bailey* v. *Kain, supra; Newsom* v. *Penn. Railroad Company*, 134 Ind. App. 120, 186 N. E. 2d 699 (1962) ; *Topper* v. *Dunn*, 132 Ind. App. 306, 177 N. E. 2d 387 (1961).

The law imposes on the trial judge several duties. He must weigh conflicting evidence and on a motion for new trial it must appear to the trial judge that substantial justice has been done. If he feels that the preponderance of the evidence is against the verdict, it is his duty to grant the new trial. See *Novak, Admrx. etc.* v. *Chi. & C. Dist. Tr. Co. et al.*, 235 Ind. 489, 135 N. E. 2d 1 (1956) ; *State ex rel. Conner* v. *Pritchard, Judge*, 115 Ind. App. 55, 54 N. E. 2d 283 (1944).

In the instant case the trial judge entered the following reasons for sustaining the Motion for New Trial:

"1. Under specification 1 of the motion for a new trial, the Court, after reflection following trial and after weighing all the evidence, was and is of the opinion that the verdict of the jury was against the clear preponderance of the

evidence and that such preponderance is in favor of the defendants and against the plaintiff.

"Plaintiff in this litigation has claimed that he had an explicit contract for the "sales year" 1964-1965. Except for his stating a personal conclusion at the beginning of his testimony that he was employed in 1957 on a yearly basis to sell asphalt, there is no evidence of such contract. When further questioned, plaintiff conceded that he had never discussed tenure of employment with anyone from the company. Plaintiff's own testimony establishes that he was a commission salesman, that he received commissions only on delivered asphalt and that no asphalt was delivered in 1965 because the company ceased operations. Defendant's evidence established that the cessation in operations was due to economic reasons, that the company had made considerable but unsuccessful efforts to make the operation a profitable one and that it was not sold as a going concern but that the equipment was sold as scrap.

"According to plaintiff's testimony, he expended $2,850.16 in promotional activities with potential customers in late 1964 and early 1965. It is my conclusion, in my capacity as a thirteenth juror, based on all the evidence and testimony presented, that the evidence fell far short of proving that plaintiff had a contract, explicit or implied, which bound the company to reimburse him for those expenses, the amounts of which were solely within his discretion, or to employ him through the summer and into the fall of 1965 whether or not it remained in business.

"2. Under specification 2 of the motion for a new trial, the Court was and is of the opinion that the verdict of the jury is contrary to law. For the reasons heretofore stated under specification 1 and hereafter stated under specifications 3 and 4, I have concluded that the amount of verdict is not sustained by sufficient evidence. Moreover, with respect to the alleged contract, plaintiff was a commission salesman, without obligation to remain with Berry Refining Company. The law normally implies that such an employment was an agency terminable at will, without liability for further compensation. In this action, the evidence does not establish that degree of certainty and definiteness which is necessary to the formation of a binding and enforceable contract and, indeed, because of the right of plaintiff to leave at any time, was wholly illusory and lacked mutuality of obligation. Plaintiff in his testimony himself recognized that he could terminate his association with defendant for any reason and at any time without being liable to de-

fendant. At best, plaintiff had a right to receive commissions on delivered asphalt, each delivery constituting an acceptance by the company of one of a series of offers by plaintiff for a unilateral contract.

"Finally, the evidence made clear that although plaintiff's promotional activities were greatest during one period of the year, the services which he had to perform in order to earn a commission on delivered asphalt, in servicing customers, continued until delivery. I know of no precedent which requires a company in financial troubles to continue in business so as to permit a salesman to render these services, on pain of being liable for potential future commissions if it ceases operations. Both the company and plaintiff hoped to be compensated from completed sales of asphalt and the hopes of both the company and plaintiff were destroyed when the company closed for economic reasons. This does not, however, create any liability from one to the other on anticipated sales.

"3 and 4. Under specifications 3 and 4 of the motion for a new trial, the Court was and is of the opinion that there was error in the assessment of the amount of recovery, in that the amount is too large, and that the damages assessed are excessive. I do not believe that plaintiff proved a contract right to commissions on anticipated orders. It is undisputed that there were no completed sales. But even if plaintiff had proved a right to commissions on anticipated sales, there is no evidence upon which to compute commissions or to award damages except by pure speculation as to what might have been earned.

"One potential transaction, involving the Edward C. Levy Company, Detroit, referred to 'anticipated' purchases and left both the amount and the price subject to later negotiation. Two bids, to DeKalb County and the City of Elkhart, did not obligate the jurisdictions to purchase any asphalt and there is no evidence whatsoever as to what commission plaintiff might have received if in fact some asphalt had been sold and delivered to those jurisdictions in 1965 on these competitive bids at other than posted prices. The other evidence submitted by plaintiff as to anticipated sales was three 'get well' letters sent by prior customers, followed by the testimony of these customers that they intended to buy asphalt. There is no evidence that they would in fact have done so because there were no firm orders and no deliveries in 1965.

"Even measured by past commissions, the jury verdict was speculation unsupported by past experience. I might

add that such a measure of damages was directly contrary to the law stated in the first paragraph of defendant's instruction No. 5, in defendant's instruction No. 6 and in defendant's instruction No. 9, all of which I gave.

"The jury verdict of $49,000 is considerably more than plaintiff's net earnings in any previous year. Only in 1963 did his net commissions approach the magnitude of the jury verdict. During the previous year plaintiff had earned net commissions slightly in excess of $36,000. In 1961 his earnings were approximately $19,000 and in 1962, approximately $23,000. In all these years plaintiff had spent considerable sums for promotion and had been actively engaged in the business on a continuing basis. In late 1964 plaintiff became ill and the evidence is clear that he was unable to engage in his usual promotional activities after that date and that his total promotional expenditures were partially reduced. In these circumstances, even if plaintiff had proved a contract to pay commissions on anticipated sales, for the jury to conclude that plaintiff would have earned commissions of $49,000 is unsupported by the evidence and the law and is contrary to the instructions.

"4. Under specification 6 of the motion for a new trial, the Court was and is of the opinion that there was error in permitting the plaintiff to introduce in evidence each of the documents referred to in subparagraphs (a) through (g) inclusive, in that none of said documents is of any probative value and does not establish the consummation of any sales upon which plaintiff might have claimed a commission, but on the contrary are merely letters expressing a desire to resume, increase or do business with the plaintiff at a future time.

"I believe that what I have stated above clearly indicates my reasons for granting a new trial under specifications 6(h), (i) and (j). As a thirteenth juror, I believe that the evidence failed to show any agreement, express or implied, to pay commissions except upon delivered asphalt and that any other conclusion would be unsupported by law. But in addition, instructions which permitted the jury to consider both promotional expenditures and commissions, even if a contract to pay such commissions had been proved, result in double damages and are inconsistent. Accordingly, I granted a new trial based upon specification 6(h) and instruction 10 of specification 6(i) for that reason."

As this court stated in *Bailey* v. *Kain, supra:*

"We will be hesitant to overrule a trial court in granting a motion for new trial for the reason that there are strong presumptions in favor of the trial court's action, and it is therefore a sound precedent which dictates that this court should be reluctant to second guess a trial court in granting a motion for new trial." 135 Ind. App. at 663.

Further, in *Bailey* v. *Kain, supra,* Judge Hunter articulated the guiding principles behind this appellate scope of review:

"The trial judge is more than a mere umpire; his duties extend beyond the bounds of confining the evidence to the issues and instructing the jury on the law of the case; it was his duty to hear the case along with the jury; he had the opportunity to see and know the jury; he had the duty to observe the witnesses and note the level of their intelligence and wisdom together with their independence or lack of it, their prejudice or lack of it concerning matters about which they testified, and to note their bias or prejudice, their interest or lack of interest. In short, it was his duty to keep his eyes and ears open to what was going on during the trial so that when confronted with a motion for a new trial, he could pass upon the purely legal questions involved in the case as well as determine the weight and sufficiency of the evidence to sustain the verdict. There are many things the trial judge must take in consideration in determining the weight of conflicting evidence and passing upon the question of the preponderance thereof which make his duty in the first instance entirely different from that of an appellate tribunal as a court of review, for at the appellate level we have only the record and briefs exemplified by the cold type before us." 135 Ind. App. 657.

The evidence in this case as to the existence of an employment contract between the Appellant and Appellee is in conflict. The evidence does not point only to the one side or the other. Based upon the principles cited above, we believe that the granting of the Motion for New Trial must be affirmed. We find no flagrant abuse of discretion, no flagrant injustice done to the Appellant, nor, in light of the applicable principles, a very strong case for relief from the trial court's finding. Because we find the first reason given for sustaining

the Motion for New Trial valid, i.e. that the trial judge acting as a thirteenth juror believed the evidence failed to prove a contract of employment, we do not need to consider the other grounds given.

Affirmed. Costs v. Appellant.

Pfaff, C.J., Hoffman and White, JJ., concur.

NOTE.—Reported in 248 N. E. 2d 398.