WILLIS FITCH *v.* STATE OF INDIANA.

[No. 1-473A56. Filed July 18, 1974.]

*Harriette Bailey Conn (Mrs.)*, Public Defender of Indiana, *John R. Gerbracht*, Deputy Public Defender, for appellant.

*Theodore L. Sendak*, Attorney General, *Russell D. Millbranth*, Deputy Attorney General, for appellee.

LYBROOK, J.—Defendant-appellant Fitch was charged by affidavit with the crime of rape, to which he entered a plea of not guilty by reason of temporary insanity. Trial by court resulted in a judgment of guilty, and Fitch appeals presenting the following issue for review:

> Whether there is sufficient evidence to sustain a finding that Fitch was sane beyond a reasonable doubt at the time of the commission of the offense.

The evidence most favorable to the State reveals that in December of 1971, Fitch was residing with his wife, Emma, and her two children by a former marriage, Allen and Teresa. Teresa, who was at that time fourteen years of age, testified that on the evening of December 2, she went to bed at about nine o'clock. Later that evening, after her mother had left for work, Fitch entered her bedroom. He handed her a note or letter and requested that she transcribe it in her own handwriting, which she did. Though unable to recall the exact contents of the note, it generally indicated that she, Teresa, was sorry for the trouble which she had caused her mother and that she would be leaving the family.

After Teresa finished copying the note, Fitch placed it on a dresser and then seated himself on the edge of her bed. She testified that Fitch had a hand gun in his possession at that time. He then asked her how much she wanted to live and threatened to kill her unless she did what he wanted.

After ordering her to his bedroom, Fitch instructed her to remove her pajamas, threatening to hurt her brother and mother if she did not comply. Fitch then administered a contraceptive to Teresa and proceeded to have intercourse with her two times.

Teresa testified that due to the presence of Fitch, on the following morning, she was unable to inform her mother of the events of the previous evening. After arriving at school, she related the incident to her counselor who, in turn, informed Fitch's wife, Emma.

Emma testified that during the day following the incident, she confronted Fitch with the information which she had received and that he admitted having intercourse with his stepdaughter. She further testified that Fitch told her he did not want to be prosecuted and that he did not want his mother and father to learn of the incident.

Fitch then left the State for two to three days, but subsequently returned and, with Emma, visited a psychiatrist on December 8, 1971. Fitch was hospitalized under the care of this psychiatrist, Dr. Gene Moore, for approximately two months. At the time of trial, Fitch was still undergoing treatment by Dr. Moore on an outpatient basis.

After Fitch entered his insanity plea, the court ordered his appearance for psychiatric examinations by Dr. Gerald Johnston and Dr. Bradley Boen. These doctors examined Fitch on June 6, 1972 and June 13, 1972, respectively. On the basis of information obtained during these interviews and a review of Fitch's hospital records, both doctors prepared and submitted written reports to the court, and both, in addition to Dr. Moore, testified at trial.

## I.

It is true, as Fitch contends, that once a criminal defendant raises the issue of his sanity, the burden of proving sanity rests upon the State. *Johnson* v. *State* (1970), 255 Ind. 324, 264 N.E.2d 57; *Lenovich* v. *State* (1958), 238 Ind. 359, 150 N.E.2d 884; *Flowers* v. *State* (1956), 236 Ind. 151, 139 N.E.2d 185.

In arguing that the State wholly failed to sustain its burden, Fitch focuses on the expert testimony of Doctors Moore, Johnston, and Boen. Generally, Dr. Moore testified that on the basis of his examinations, he was of the opinion that Fitch was insane under the laws of Indiana at the time of the act. Based upon their interviews with Fitch and reviews of his hospital records, Doctors Johnston and Moore reached similar conclusions.

Fitch emphasizes that no other experts were called and that the only other testimony bearing upon the issue of his sanity was that of various lay witnesses called by the State.

Expert testimony is not conclusive upon the issue of a criminal defendant's sanity. The adoption of such a view would constitute a usurpation of the role of the judge or jury as the trier of fact. The function of the expert witness is advisory in nature. He does not state *fact*. Rather, he renders an *opinion* to aid the trier of fact with whom the ultimate decision on the issue must rest. *Smith* v. *State* (1972), 259 Ind. 187, 285 N.E.2d 275; *Hill* v. *State* (1969), 252 Ind. 601, 251 N.E.2d 429.

In addition to the opinions of experts, lay testimony is a valuable aid to the trier of fact in reaching a determination on the issue of sanity. *Moore* v. *State* (1973), 260 Ind. 154, 293 N.E.2d 28; *Hill* v. *State, supra.*

Further, it is clear that the trier of fact may look to the acts of the crime itself in reaching a determination on this issue. *Johnson* v. *State, supra.*

It is from this perspective that we must determine the issue of the sufficiency of the evidence to sustain a finding that Fitch was sane at the time of the commission of the criminal act in question. Further, we are reminded of our standard of review as stated in *Moore* v. *State, supra:*

> "We have often held that the jury is the exclusive judge of all the evidence and may draw its own conclusions. . . . In *Freese, supra,* the Court stated:
>
> '. . . The substance of the argument is that as appellant offered evidence tending to prove appellant's unsoundness of mind, the jury was bound to acquit, in the absence of direct proof to the contrary. Unquestionably the sanity of the defendant must appear beyond a reasonable doubt, and, when the presumption of sanity that attends everyone has been overthrown or impaired, the State must re-establish it by competent proof, or the defendant should be acquitted. *But it is the province of the jury, under proper instructions, to determine when the condition of sanity has been made doubtful, and when the doubt has been removed.' Id.* at 604, 65 N.E. 917-918 (emphasis added).
>
> \* \* \*
>
> ". . . When the evidence is in conflict this court may not substitute its judgment for that of the jury."

As long as there is evidence to support the issue of sanity for which the State bears the burden of proof, we may not disturb the decision of the trier of fact. *Stamper* v. *State* (1973), 260 Ind. 211, 294 N.E.2d 609.

## II.

In *Hill* v. *State, supra,* our Supreme Court approved the American Law Institute's alternative definition of insanity as adopted by *United States* v. *Freeman* (2d Cir. 1966), 357 F.2d 606, and followed by the Seventh Circuit in *United States* v. *Shapiro* (7th Cir. 1967), 383 F.2d 680, which reads:

> "A person is not responsible for criminal conduct if at the time of such conduct as a result of mental disease or defect he lacks substantial capacity either to *appreciate* the wrongfulness of his conduct or to conform his conduct to the requirements of law. (2) As used in this Article, the terms 'mental disease or defect' do *not* include an abnormality manifested only by repeated criminal or otherwise anti-

social conduct. American Law Institute, Model Penal Code (final draft) (1962)."

On the basis of the information which they had gathered, the expert witnesses in the case at bar were of the opinion that Fitch lacked substantial capacity to appreciate the wrongfulness of his act. However, Dr. Johnston, during examination by the prosecuting attorney, indicated that proof of cautioning the girl to silence either during or before the act would be an indication that Fitch was aware that the act was wrong, at least legally and possibly morally. He further stated that the insertion of a suppository contraceptive into the girl would indicate an awareness by Fitch of the possible consequences of pregnancy. Likewise, Dr. Boen admitted that cautioning the girl about telling someone could, to a certain extent, indicate a consciousness of wrongdoing.

The evidence reveals that Fitch's threats against the girl's mother and brother were directed not only to inducing compliance with his wishes at that time but also to securing subsequent silence and future periodic compliance to the same act. On direct examination, Teresa testified:

". . . Well, he said it'd happen again about once a month if I—you know, if I had said anything, that he was going to hurt my brother and my Mom and he said that I wasn't going to be there any more if—you know, if I hadn't done anything you know—what he said."

Teresa testified that the following morning she was unable to relate the incident to her mother because Fitch followed the mother as she moved about the house. When Teresa returned home from school that day, Fitch asked her if she had told anyone of the incident.

With respect to Dr. Johnston's statement concerning the administration of a contraceptive, the evidence reveals that Fitch did so prior to engaging in intercourse with the girl.

On cross examination, Dr. Moore testified that if Fitch was fearful of prosecution immediately after the act, he probably knew the nature and consequences of the act. Fitch's

wife testified that when she confronted him concerning the incident on the following day, he stated that he did not want to be prosecuted.

Further bearing on the question of Fitch's capacity to appreciate the wrongfulness of his act is Dr. Boen's testimony that Fitch told him of feeling a sense of wrongfulness immediately after the act.

The above statements of the expert witnesses coupled with the facts surrounding the incident in question support a finding that Fitch was aware of the wrongfulness of his act.

Additionally, the record contains testimony from several lay witnesses with whom Fitch had associated at various times prior to the incident in question. It would serve no useful purpose to engage in lengthy summarizations of this testimony. Much of it bears upon the issue of Fitch's sanity and tends to support the determination of the trial court.

Since the evidence was conflicting on the issue of defendant's sanity, we decline to substitute our judgment for the trier of fact. This cause must therefore be affirmed.

Affirmed.

Robertson, P.J. and Lowdermilk, J. concur.

NOTE.—Reported at 313 N.E.2d 548.