ARTHUR BLAND GREENLEE, III *v.* STATE OF INDIANA.

[No. 3-475A63. Filed September 16, 1976.]

*Ronald V. Aungst, Aungst & Johnson,* of Valparaiso, for appellant.

*Theodore L. Sendak,* Attorney General, *Arthur Thaddeus Perry,* Deputy Attorney General, for appellee.

HOFFMAN, J.—Defendant-appellant Arthur Bland Greenlee, III, was convicted of the crimes of first degree burglary[1] and aggravated assault and battery,[2] following a trial before a jury. Appellant timely filed his motion to correct errors which was overruled by the trial court, and he subsequently perfected this appeal.

---

1. IC 1971, 35-13-4-4(a) (Burns Code Ed.).
2. IC 1971, 35-13-3-1 (Burns Code Ed.).

The evidence and reasonable inferences therefrom most favorable to the appellee State establish that at between one and two o'clock A.M. on August 30, 1973, the prosecutrix was awakened by a "tap on the head." The prosecutrix next found herself on the floor beside the bed beneath appellant, who was moving the lower part of his body up and down on top of her. She felt blood on the back of her head, yelled to attract the attention of her neighbors, and struggled to get away from appellant. Appellant attempted to remove the prosecutrix' underwear but was unsuccessful. After about five minutes appellant got up, and then struck the prosecutrix approximately five times about the head with a knobbed wooden object. Appellant then addressed the prosecutrix by name and stated, "I'm going to kill you." Appellant then left the bedroom, closing the door behind him. The prosecutrix attempted to follow but was initially unable to open the door. When she finally opened the door, she was able to see appellant clearly with the aid of a light in the kitchen area of the apartment. Appellant again struck the prosecutrix and then exited the apartment.

On September 20, 1973, at about 2:10 A.M., defendant was taken into custody for questioning, after his Miranda rights were read to him. He was taken to the Valparaiso police station. At the police station a charge of public intoxication was placed against him. At 2:40 A.M., the Miranda warnings were again read and a waiver signed by defendant. At about 3:22 A.M. that day Detective Captain Martin Diedrich of the Valparaiso police department read to appellant and allowed appellant to read his Miranda rights from standard rights and waiver of rights forms. Appellant then initialed the rights form to indicate his understanding of his rights, and signed the waiver form. At approximately 6:30 A.M. appellant made a statement admitting his perpetration of the crimes for which he was convicted. Such statement was taken by Detective Diedrich and was signed by appellant.

Following his conviction, appellant filed a petition for examination as a criminal sexual deviant under IC 1971, 35-11-3.1-3 (Burns Code Ed.). Such petition was overruled by the trial court at a post-conviction hearing on September 4, 1974, as being "not well-taken under [a] strict interpretation of the statute [IC 1971, 35-11-3.1-1, *et seq.* (Burns Code Ed.)]."

Appellant first contends that the trial court erred in admitting in evidence the waiver of rights form which he signed and the statement which he then made. Appellant moved the trial court to suppress such evidence, and an evidentiary hearing was had upon such motion.

On appeal, appellant contends that the trial court erred in admitting such evidence because it was established at the hearing on his motion to suppress that he was intoxicated at the time such waiver and statement were given. This conclusion is compelled, appellant asserts, from evidence that he was arrested for public intoxication prior to making such waiver and statement, and his own testimony that he had consumed alcohol that night and did not recall making a waiver and statement. In support of this contention, appellant has cited the case of *McClanahan* v. *State* (1953), 232 Ind. 567, 112 N.E.2d 575. Therein, our Supreme Court stated that "[i]f an accused *in fact is intoxicated* . . . his mental condition is such that he could not enter a *plea of guilty* to the charge 'freely and understandingly,' which must be the case if the plea be valid." (Emphasis added.) *Ibid.* at 571 of 232 Ind., at 577 of 112 N.E.2d. Appellant contends by inference from the above quoted passage "that a person who is *under a charge of public intoxication* cannot act 'freely and understandingly.'" (Emphasis added.)

However, the *McClanahan* case may not logically be stretched to support appellant's contention. First, it must be noted that an admission rather than a guilty plea was involved in the case at bar. "As a general rule, intoxication affects only the weight to be given an ad-

mission. . . . [I]ntoxication renders the statement inadmissible only when such intoxication was of such a degree as to produce a state of mania or unconsciousness." *Feller* v. *State* (1976), 264 Ind. 541, 348 N.E.2d 8, at 12. Even appellant's own testimony of his alcoholic consumption does not suggest that this degree of intoxication was reached. Second, that appellant was charged with public intoxication does not demonstrate that he was "in fact" intoxicated. Furthermore, the testimony of police officers indicated that appellant did, indeed, act freely and understandingly when waiving his Miranda rights and making his statements.

"In reviewing a trial court's ruling upon the voluntariness of a confession, we must determine only if there was clear error. (Citation omitted.) To make this determination, we consider the evidence which supports the trial court's decision, when the evidence is in conflict, and any unrefuted evidence presented by the defendant." *Feller* v. *State, supra,* at 545 of 264 Ind., at 12-13 of 348 N.E.2d *Cf: Sotelo* v. *State* (1976), 264 Ind. 298, 342 N.E.2d 844.

The evidence most favorable to the State supports the ruling of the trial court. The evidence presented by the defendant was insufficient to establish that his confession was involuntary and, furthermore, was refuted by evidence presented by the State. The appellant has shown no error.

Appellant next contends that the trial court erred in admitting lay opinion testimony pertaining to his sanity some twenty days subsequent to the time of the crime. Such testimony consisted of the opinions of police officers who observed appellant upon his arrest about twenty days after the commission of the crime here at issue.

Appellant recognizes that lay testimony is proper on an issue of sanity. *See, Fitch* v. *State* (1974), 160 Ind. App. 697, 313 N.E.2d 548, 549. However, he contends that in this case the lay opinion as to his sanity was not based upon a sufficient foundation because the witnesses' contact with him occurred twenty days after the acts

for which he was convicted at trial and the witnesses were not shown to be versed in the Indiana test for legal sanity.

In *Baum* v. *State* (1976), 264 Ind. 421, 345 N.E.2d 831, our Supreme Court was faced by a similar challenge of improper foundation for lay opinions of sanity given by police officers. Therein, the court stated:

> "Traditionally, a layman has been required to state the facts upon which his opinion is based. (Citations omitted.) However, we have held that it is sufficient for the layman to state that he saw and spoke upon one occasion with the person concerning whose sanity he is giving an opinion. (Citation omitted.) Anything more goes only to the weight of the opinion." (*Ibid.*, at 425 of 264 Ind., at 834 of 345 N.E. 2d.) See also: *Cockrum* v. *State* (1968), 250 Ind. 366, 234 N.E.2d 479.

Both Detectives Diedrich and Buchanan were shown to have had a sufficient exposure to appellant to have formed opinions as to his sanity. There is no requirement in Indiana that such witnesses have an understanding of legal standard of sanity. No error has been demonstrated as to this issue.

Appellant next asserts that the trial court erred in admitting in evidence a towel and items of clothing worn by the prosecutrix on the night of the crime. These items were identified by the prosecutrix and by Detective Diedrich. Detective Diedrich had not seen the clothes while they were being worn by prosecutrix, but had received them from an emergency room nurse, whom he had asked to retain the prosecutrix' clothing for evidentiary purposes. After receiving the clothing, Detective Diedrich kept it in a police department locker to which he had the only key until the Friday before trial. He then placed the items in his office, and later removed them from his office to give them to the prosecutor on the first day of trial.

In challenging the admission of such items, appellant questions the sufficiency of the chain of custody which was estab-

lished for such exhibits. In support of his contention, appellant has cited the case of *Traylor* v. *State* (1975), 164 Ind. App. 50, 326 N.E.2d 614, in which this court discussed the rationale of the chain of custody rule. *Traylor,* however, dealt with fungible narcotics, which have been recognized as susceptible to claims of substitution, tampering or mistake. *Graham* v. *State* (1970), 253 Ind. 525, 255 N.E.2d 652. The test for non-fungible evidence is not as rigid. "[T]he chain of custody rule applies with diminishing strictness as the exhibits concerned become decreasingly susceptible to alteration, tampering or substitution." *Coleman* v. *State* (1975), 264 Ind. 64, 339 N.E.2d 51, 55. Appellant asserts that the State should have established that the condition of the articles at trial was not changed from their condition on the night of the incident. However, he has not asserted that any tampering occurred, nor has he suggested how their condition might have been changed. "[A] mere possibility that the evidence could have been tampered with will not make it inadmissible." *Loza* v. *State* (1975), 263 Ind. 124, 325 N.E.2d 173, at 177. Further, insofar as appellant bases his attack upon the chain of custody of these items upon the initial control of the clothing by the nurse, he is in error. "[T]he chain of possession need be shown only from the time the State receives an exhibit." *Brown* v. *State* (1976), 168 Ind. App. 440, 343 N.E.2d 790, at 791, citing *Smith* v. *State* (1974), 160 Ind. App. 622, 312 N.E.2d 896. Such a chain of custody was adequately established by the State at trial. The trial court did not err in admitting these exhibits. Further, appellant has given no indication as to how he may have been prejudiced by the admission of such articles in evidence. Any error which might have been occasioned by their admission in evidence would be harmless error in these circumstances. *Frasier* v. *State* (1974), 262 Ind. 59, 312 N.E.2d 77.

Appellant next contends that the trial court erred in failing to grant his petition for examination as a possible criminal

sexual deviant. He contends that since his crimes involved sexual acts, he comes within the purview of IC 1971, 35-11-3.1-1(a), *supra,* which defines a criminal sexual deviant, in part, as "any person over the age of sixteen [16] years who has been convicted of a sexual offense or an offense which directly involved the commission of an illegal sexual act * * * ."

However, IC 1971, 35-11-3.1-3, *supra,* provides, in pertinent part:

> "(a) A petition may be made that a person be examined as a possible criminal sexual deviant after he has been *convicted of * * * a sexual offense * * * ."* (Emphasis added.)

Thus, before a person is eligible to petition for examination as a possible criminal sexual deviant, he must first be *convicted* of a sexual offense. *Adams* v. *State* (1976), 265 Ind. 129, 352 N.E.2d 490; *Feller* v. *State, supra* (1976), 264 Ind. 541, 348 N.E.2d 8; *Pieper* v. *State* (1975), 262 Ind. 580, 321 N.E.2d 196.

However, in determining whether an alleged criminal sexual deviant should be *committed* for treatment, the trial court may make the determination that defendant is a criminal sexual deviant partly upon consideration of convictions for any "offense which directly involved the commission of an illegal sexual act." *Pieper* v. *State, supra.*

In *Adams* v. *State, supra,* the defendant was convicted on multiple counts of kidnapping and committing a felony while armed. The charges were based upon the knife-point abductions of young women for the purpose of requiring them to commit "sexually deviant acts" with defendant. The trial court found that defendant was a sexual deviant and ordered him committed for treatment under the armed felony convictions but not under the kidnapping convictions. After findings that the sentences on the armed felony charges were erroneously imposed, the court addressed the issue of whether the trial court erred in not applying the criminal sexual deviancy statute to the kidnapping conviction. In holding that the

statute did not apply to the kidnapping conviction, our Supreme Court stated that a conviction for a sex offense is a precondition to eligibility. It then concluded that the offenses for which appellant was convicted were not themselves sex offenses although they were incidental to the accomplishment of acts of sexual deviancy.

In the case at bar, appellant was convicted of first degree burglary and aggravated assault and battery, neither of which is a sexual offense. Although appellant's acts were undoubtedly sexually motivated, this case does not come within the purview of the statutory scheme as it was enacted by our Legislature.

Appellant having shown no reversible error, the judgment of the trial court must be affirmed.

Affirmed.

Garrard, J., concurs; Staton, P.J., concurs in part; dissents in part with opinion.

OPINION CONCURRING IN PART, DISSENTING IN PART

STATON, P.J.—I concur with the majority opinion that the conviction should be affirmed, but I dissent from the majority opinion where it affirms the ruling of the trial court upon the sexual deviant petition.

Greenlee should have been sentenced under the Criminal Sexual Deviancy Statutes.[1] IC 1971, 35-11-3.1-1 (Burns Code Ed.) defines "criminal sexual deviant" as "any person over the age of sixteen (16) years who has been convicted of a sexual offense *or an offense which directly involved the commission of an illegal sexual act, . . .*" (My emphasis). The majority bases its conclusion that Greenlee does not come under the purview of the statute on the wording of IC 1971, 35-11-3.1-3 (a) : "A petition may be made that a person be examined as a possible criminal sexual deviant after he has been convicted

1. IC 1971, 35-11-3.1-1 *et seq.* (Burns Code Ed.).

of and prior to sentencing for a sexual offense *not excluded by the scope of this chapter* [35-11-3.1-1—35-11-3.1-3]." (My emphasis). The majority focused on "convicted of . . . a sexual offense. . . ."

This is only half of the test. I would affirm the conviction and remand for sentencing under the sexual deviant statute.

## I.

### Statutory Construction

The use of "or" in a statute indicates the disjunctive. Thus, two separate situations were contemplated by the legislature when the Criminal Sexual Deviancy Statutes were enacted: (1) where an individual is convicted of a sexual offense; (2) where an individual is convicted of an offense which directly involved the commission of an illegal sexual act. In IC 1971, 35-11-3.1-3(a), the words "sexual offense" necessarily encompass both situations; to construe the statute otherwise would leave the second circumstance unexplained in the law.

> "In construing legislation, this Court must employ a reasonable interpretation of statutory language as a means of discovering the legislature's true goals. It cannot be presumed that our lawmakers expect their enactments to be applied in an illogical or absurd manner." *Pryor* v. *State* (1973), 260 Ind. 408, 412, 296 N.E.2d 125, 127.

The cardinal rule of statutory construction is to ascertain and give effect to the legislative intent. *Hunt* v. *State* (1924), 195 Ind. 585, 146 N.E. 329.

## II.

### Legislative Intent

A statement of the purpose of the Criminal Sexual Psychopath Statute (the predecessor of the Criminal Sexual Deviancy Statute) was contained in *State* v. *Criminal Court* (1955), 234 Ind. 632, 637, 130 N.E.2d 128, 131:

> "The purpose of the proceedings and confinement under the [criminal sexual psychopath statute was] primarily to protect society against such persons regardless of criminal guilt."

Likewise, the existence of Criminal Sexual Deviancy Statutes indicates a legislative recognition that something more than punishment *per se* may be necessary for the benefit of the society and the criminal.

## III.

### Sexual Deviancy Evidence

There was evidence that society needed to be protected from Greenlee's behavior. Greenlee's father testified that it was necessary for his son to seek help from a psychiatrist ". . . real early in either junior high or early high school." He testified that his son had seen a psychiatrist more than ten times. The father revealed that Greenlee's mother had been confined to a mental institution and that Greenlee's younger brother had attempted to hang himself a week before the trial. Later, Rigg Scott, a friend, testified that Greenlee told him before his arrest that ". . . he thought he needed help from psychiatrists, . . ." and that he had gone to a Guidance Clinic in Valparaiso. The trial court could have reasonably inferred from this evidence that Greenlee may be a person who could injure society.

Sexual deviancy was suggested by Greenlee's defense psychiatrist, Dr. Frieske. He testified: "I characterized him as having antisocial traits, a definite trend toward sexual deviation, voyeurism, exhibitionism, sadistic feelings, marked sexual aggressiveness." He testified that Greenlee's whole personality ". . . was skewed in this direction of deviant sexual behavior." This diagnosis was not disputed by the court-appointed psychiatrist, Dr. Metcalfe, who testified that Greenlee was "suffering from more than sexual deviation and with a sexual orientation that more closely fitted in with a psychotic one or a schizophrenic . . . I wouldn't quibble too much with anyone who wished to call him a sexual psychopath." Greenlee wanted treatment and without help there was a possibility that he would repeat these sexual crimes, since ". . . schizophrenia is

a chronic mental illness that usually has some roots in one's early life and there are some people who will even believe that there could be some hereditary aspect to it." He concluded that a schizophrenic paranoid is treatable. On the 30th of August, 1973, Greenlee was suffering from a schizophrenic paranoid condition.

A second court-appointed psychiatrist, Dr. DuSold, testified that Greenlee's ". . . psychiatric diagnosis is dissocial personality . . . it falls most closely to the legal definition of the sexual deviate." Greenlee's ". . . release of sexual tension became not enough and he had to actually release the anger as well. . . . He has confessed to many, many things that this Court may or may not know anything about. . . . When he came into my office he put himself literally at my mercy by telling me things that the police know nothing about, any one of which could be damaging. He was aware enough of his own difficulties, of being unable to release the tension, that he sought help voluntarily—and this is also confirmed—before he was ever arrested." He concluded that Greenlee was treatable and stated that ". . . he would not be benefitted nor would society by merely incarcerating him in jail . . . and there would come a time when we would have to turn him loose on society again without any change in his behavior."

After reviewing this uncontroverted evidence, I can only conclude that Greenlee was indeed a sexual deviant and that society needed to be protected before he was released again. The conclusion of the trial court that the ". . . motion is not well-taken under the strict interpretation of the statute" is reversible error.[2]

---

2. While it is generally true that penal statutes are strictly construed, *Kelley* v. *State* (1954), 233 Ind. 294, 119 N.E.2d 322, the purpose of the Criminal Sexual Deviancy Statutes is not penal. Even were this not so, strict letter yields to obvious intent. *Cyrus* v. *State* (1924), 195 Ind. 346, 145 N.E. 497. And where ambiguity does exist in a criminal statute, it must be resolved in favor of the accused. *Utley* v. *State* (1972), 258 Ind. 443, 281 N.E.2d 888.

"In cases of ambiguity, we must search for legislative intent. If more than one construction is possible, the court may consider the consequences of a particular construction. . . . Once having determined such intent, however, the ambiguity disappears, and we are no more

## IV.

## Conclusion

Greenlee qualifies as a criminal sexual deviant. (1) He committed an offense directly involving the commission of an illegal sexual act; (2) some testimony at trial indicates his condition may be treatable (it would be up to the Department of Mental Health to make the final determination during the 120 day observation period prior to commitment); (3) the purposes of the sexual deviancy legislation would be subverted if only those convicted of sexual offenses could qualify for treatment. There is considerable flexibility in the selection of a charge to be placed upon a series of criminal acts. The charge-conviction criteria adopted by the majority opinion is only half of the total expressed legislative intent.[3] The other

at liberty to adopt a construction that will not give effect to such intent than we would be had there been no ambiguity in the first instance." *State ex rel. Bynum* v. *La Porte Superior Court* (1973), 259 Ind. 647, 650, 291 N.E.2d 355, 356.

At least two witnesses in addition to the prosecution and defense counsel found it implicit that Greenlee was charged with a sex offense, i.e., "first degree burglary, entering a residence or a dwelling house with intent to commit a felony, namely rape."

This court held in *Lindsey* v. *State* (1972), Ind. App., 282 N.E.2d 854, 857, that "The crime of first degree burglary is not a sexual offense within the meaning of the criminal sexual deviancy act." A more accurate statement would be that the crime of first degree burglary is not *necessarily* a sexual offense within the meaning of the criminal sexual deviancy act. Where, as here, the sexual components of the offense are blatant and the technicality of the official charge would obfuscate the intent of the legislation, first degree burglary would come within the statute.

3. The Indiana Supreme Court in *Pieper* v. *State* (1976), 262 Ind. 580, 321 N.E.2d 196 at 200, stated:

"It is the judgment of the Legislature that no one will be re-routed to the Department unless he first be *convicted* of a non-excluded *sexual offense*. However, after initial re-routing, in determining whether an alleged criminal sexual deviant should be committed for treatment, the trial court may make the determination that he is a criminal sexual deviant partly upon consideration of convictions for any 'offense which directly involved the commission of an illegal sexual act.'" (Original emphasis).

The Court therein recognized the two halves of the criteria for "sexual deviant." It would be illogical to assume that the trial court *may consider* for commitment purposes convictions for any offense directly involving the commission of an illegal sexual act and *not consider* them for diagnostic purposes. The Supreme Court distinguished the uses in *Pieper* because a kidnapping conviction, in and of itself, cannot be, in either half of the defined scope, a sexual offense. First Degree Burglary *may be*.

half is an offense, here first degree burglary, which directly involved the commission of an illegal sexual act—here attempted rape and assault and battery with intent to gratify. In Greenlee's case, the clear, uncontroverted evidence best serves the purpose of the sexual deviant statute. Greenlee was a sexual deviant seeking treatment. Untreated, he presented a potential threat to society. I would affirm the conviction and remand this cause to the trial court for sentencing under the sexual deviant statute.

NOTE.—Reported at 354 N.E.2d 312.