Filed 6/13/13  P. v. Song CA2/5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE, | B241253 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. GA081110) |
| v. | |
| DEQIANG SONG, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Candace J. Beason, Judge.  Affirmed as modified, remanded with directions.

Janet J. Gray, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, James William Bilderback II and Sonya Roth, Deputy Attorneys General, for Plaintiff and Respondent.

## I. INTRODUCTION

A jury convicted defendant, Deqiang Song, of kidnapping for ransom and willful, deliberate, premeditated attempted murder in counts 1 and 2 respectively. (Pen. Code,[1] §§ 209, subd. (a), 664, 187, subd. (a).) The jury found that in the commission of the kidnapping for ransom, defendant: caused the victim, Ling S., to suffer bodily harm; intentionally confined her in a way that created a substantial risk of death; and personally used a deadly and dangerous weapon, a knife. (§§ 209, subd. (a), 12022, subd. (b)(1).) The jury further found that in the commission of the attempted murder, defendant personally used a knife and inflicted great bodily injury. (§§ 12022, subd. (b)(1), 12022.7, subd. (a).) Defendant was sentenced to an indeterminate term of life without the possibility of parole on count 1. Defendant was consecutively sentenced to an indeterminate life term and a determinate four-year term on count 2. We modify the judgment as to assessments and presentence custody credit. We remand in order for the trial court to impose or strike the personal knife use enhancement (§ 12022, subd. (b)(1)) as to count 1. We affirm the judgment in all other respects.

## II. THE EVIDENCE

Defendant and Ling met through a mutual friend. They had seen each other socially about three times prior to September 8, 2010. Ling considered defendant a friend. On September 8, 2010, defendant took Ling to the Arcadia Mall in Santa Anita. Defendant waited in his sport utility vehicle while Ling shopped. Ling purchased a white tank top at Wet Seal. When Ling returned, defendant asked her to ride to San Gabriel with him. Defendant purportedly intended to pick up a friend. Ling agreed. After about an hour's drive, Ling began to feel tired and uncomfortable. She had pain in her lower back. She testified, "I asked him how much longer is it going to be, because it's been

---

[1] Unless otherwise noted, all statutory references are to the Penal Code.

quite some time, and I really wanted to go home." Defendant told her they would be there soon. Defendant drove a total of 77 miles until they reached a remote desert area. Defendant stopped his sport utility vehicle, went to the back and opened the rear hatch. He came around to the passenger side, opened the passenger door and placed a knife with a seven to eight-inch blade against Ling's throat. He bound her wrists and ankles with clear tape. He told her to move to the back seat. Defendant sat down next to Ling. He took her cellular telephone from her purse and used it to call her father. Defendant told Ling, "I'm calling your Dad because I want some money." When Ling's father answered, defendant told him: "Your daughter is with me. . . . If you want[] her back, you need to give me $100,000." Ling's father said: "Don't you kill her. I'll pay you."

Ling's father asked to hear his daughter's voice. Defendant placed the telephone to Ling's ear. Ling told her father, "Dad, don't give him money." Defendant hung up. He appeared to be frustrated and annoyed. He told Ling, "You talk too much." Defendant moved to the front seat. Ling asked defendant to take her home. She promised not to tell the police. She told defendant: "You picked the wrong person. I don't have money. Our family doesn't have money." Defendant was very angry. He turned around and slapped Ling. Defendant returned to the rear seat and sat next to Ling. Defendant said, "I'll ask you the last time, do you have money or not?" Ling said, "No." Defendant said, "If your family doesn't have money, then I'll kill you." Defendant told Ling to turn around, to turn her back to him. He took a piece of rope from a compartment next to the car door. He strangled Ling with the rope until she was unconscious. While Ling was unconscious, defendant beat her about the face, slit her throat with a knife, and dragged her 40 to 50 feet into some bushes.

When Ling regained consciousness, she was lying on the ground. Defendant and his sport utility vehicle were gone. Ling could not open her left eye. She was bleeding from an open slit on her neck. Ling's shoes and purse were missing. But the tape that had bound her wrists and ankles had been removed. It was starting to get dark. Ling saw lights in the distance. She struggled to her feet and slowly walked toward the light. Shoeless, she walked between one-quarter and one-half of a mile. When she reached a

3

residence, she yelled for help. She lay on the ground by the front gate and repeatedly called for help. Finally, someone came to Ling's aid.

Ling's eyes were swollen and her face was bruised. There was a serious wound on her neck. There was blood everywhere. She was slipping in and out of consciousness. She was transported by helicopter to the Antelope Valley Hospital where she underwent emergency surgery. More than 20 stitches were required to close the slash wound to her neck. The knife missed Ling's carotid artery by a quarter of an inch. Had that artery been cut, Ling probably would have bled to death. The surgeon, Dr. Pavel Petrik, described Ling's other injuries, "She had obvious beating injuries to the eyes and some bleeding underneath . . . ." She had been bleeding in the white parts of her eyes.

Ling remained hospitalized for several days. The whites of her eyes stayed red for two to three months after the attack. The trial court described the scar on Ling's neck, "There appears to be a red, thin line below . . . where an Adam's apple would be, and it's from the left side to the right side in a sort of a wide U-shape."

After leaving Ling to die in the desert, defendant continued to telephone her father. Meanwhile, her father notified the police. During telephone calls monitored by law enforcement officers, Ling's father said he had only $10,000 in savings. Defendant agreed to accept that amount. Defendant instructed Ling's father to bring the money to a supermarket parking lot. Ling's father was instructed to place the money underneath his car, and then to walk away. The police gave Ling's father fake money in a paper bag and began watching the parking lot. Defendant was arrested immediately after retrieving the money from beneath Ling's father's car. Defendant's sport utility vehicle was parked nearby. It was covered by a fine layer of dirt. His fingerprints were on the bottom of the rear hatch.

While still hospitalized, Ling identified defendant in a photographic lineup. Sheriff's deputies searched defendant's sport utility vehicle and residence. In defendant's sport utility vehicle, they found Ling's cellular telephone, driver's license and credit cards. They also found latex gloves, paperwork in defendant's name, Ling's receipt from Wet Seal, a machete and a knife with an 8-inch blade. The knives did not have any blood

4

on them.  In defendant's bedroom, officers found a Coleman cooler with Ling's purse resting on top.  The contents of the cooler included a bloody knife, latex gloves, clear tape, and a Wet Seal bag containing a white shirt.  Also, there was a bloody white cord in the cooler.  Defendant's fingerprints were on several of the items in the Coleman cooler.  Ling's blood was on the knife.

Deputy Mario Cortez investigated the area where Ling was attacked.  He found tire tracks on a dirt road.  The tire tracks ended abruptly.  In the area where the tire tracks terminated, Deputy Cortez found two sections of red-stained rope, and two silver sandals.  There was a 40 to 50-foot drag mark leading away from where the tire tracks ended.  There was a red stain on the ground that appeared to be blood.  The red stain was somewhere before the drag mark ended.  No defense witnesses testified.

## III.  DISCUSSION

### A.  The Motion To Amend The Amended Information

The information was filed on March 22, 2011.  On October 27, 2011, the prosecutor filed an amended information.  During her jury argument, the prosecutor orally moved to amend the October 27, 2011 amended information.  The prosecutor moved to amend the amended information to include bodily harm and confinement allegations.  Defense counsel objected.  The amended information was never actually modified in writing.  The jury was instructed on the necessity of returning bodily harm and confinement findings.  The count 1 aggravated kidnapping written verdict form includes bodily injury and confinement findings.  The jury found the bodily harm and confinement allegations to be true.

Defendant argues that amendment to the amended information was improper.  Section 209, subdivision (a) defines the crime of kidnapping for ransom and sets forth two degrees of punishment.  When the victim "suffers death or bodily harm" or is intentionally confined in a manner so there is a substantial likelihood of death, the

5

punishment is life without parole. When the victim does not so suffer or is not so confined, the punishment is life with the possibility of parole. (§ 209, subd. (a); *People v. Centers* (1999) 73 Cal.App.4th 84, 91; see *People v. Williams* (1980) 101 Cal.App.3d 711, 723, fn. 2.) The amended information did not allege that Ling suffered bodily harm or was intentionally confined in a manner exposing her to a substantial likelihood of death. During closing argument, as noted, the trial court allowed the prosecutor to amend the amended information to so allege. Defense counsel objected on due process grounds. The trial court observed that the additional allegations had been discussed previously, before jury selection and during jury instruction discussions. The trial court inquired whether the amendment would result in a change in defense strategy. Defense counsel conceded that it would not. The jury found true the bodily harm and substantial likelihood of death allegations.

On appeal, defendant argues the amendment violated his constitutional due process rights. He further asserts the trial court abused its discretion under section 1009, governing amendments to accusatory pleadings. (See *People v. Miralrio* (2008) 167 Cal.App.4th 448, 458 [review of a decision under section 1009 is for an abuse of discretion]; *People v. Bolden* (1996) 44 Cal.App.4th 707, 716 [same].) These arguments are without merit. No amendment was necessary. And there is no showing of prejudice to defendant.

In *People v. Britton* (1936) 6 Cal.2d 1, 2, the defendants were charged with and convicted of kidnapping for the purpose of robbery in violation of section 209. When *Britton* was decided, the applicable version of section 209 (Stats. 1933, ch. 1025, § 1, pp. 2617-2618) provided, "'Every person who seizes, confines, inveigles, entices, decoys, abducts, conceals, kidnaps or carries away any individual by any means whatsoever with intent to hold or detain, or who holds or detains, such individual for ransom, reward or to commit extortion or robbery or to exact from relatives or friends of such person any money or valuable thing, or who aids or abets any such act, is guilty of a felony and upon conviction thereof shall suffer death or shall be punished by imprisonment in the state prison for life without possibility of parole, at the discretion of the jury trying the same,

6

in cases in which the person or persons subjected to such kidnap[p]ing suffers or suffer *bodily harm* or shall be punished by imprisonment in the state prison for life with possibility of parole in cases where such person or persons do not suffer *bodily harm*.'" (*People v. Britton, supra,* 6 Cal.2d at pp. 2-3, italics added.)  In 1982, section 209, subdivision (a) was amended to extend the life without parole penalty to cases where the victim is "intentionally confined" in a manner which exposes him or her to a substantial likelihood of death.  (Stats. 1982, ch. 4, § 1, pp. 4-5.)

In *Britton* the defendants were sentenced to life without the possibility of parole. On appeal, a defendant argued the trial court had no authority to impose sentence *without* the possibility of parole because the indictment contained no allegation the victim suffered bodily harm.  (*People v. Britton, supra*, 6 Cal.2d. at p. 4.)  Our Supreme Court held the sentence was warranted under the indictment and evidence.  (*Id.* at p. 6.)  Our Supreme Court explained:  "Section 209 of the Penal Code, for the purpose of this case, defines but one criminal act or offense, viz., kidnap[p]ing for purpose of robbery, for which any one of several punishments may be imposed, depending entirely upon the circumstances surrounding its commission.  A charge in the language of the statute that the accused had kidnap[p]ed his victim for the purpose of robbery in violation of the statute apprises the accused of what he will be expected to meet and of the several punishments prescribed therefor, any one of which, upon conviction, may be imposed upon him.  The indictment here involved charged the offense in the language of the statute and referred thereto.  [¶]  It is well settled in this state that an indictment or information need not allege the particular mode or means employed in the commission of an offense, except when of the essence thereof. (14 Cal. Jur. 55, sec. 41, and authorities there cited.)  In other words, particulars as to manner, means, place or circumstances need not in general be added to the statutory definition.  (*People v. Giacamella* [(1886)] 71 Cal. 48, 49; *People v. Russell* [(1889)] 81 Cal. 616, 617.)  The indictment or information need only charge the essential elements of the statutory offense.  It then fairly apprises the defendant of what he is to meet at the trial.  [¶]  So far as the present case is concerned, the essence of the offense denounced in section 209 as a felony is the seizing,

7

confining, kidnap[p]ing, etc., of the victim for the purpose of robbery.  If upon the trial of such offense, or upon plea of guilty, it develops that the victim suffered bodily harm, the jury or the court, as the case may be, may in its discretion fix the punishment at death or life imprisonment without possibility of parole or, should the victim not have suffered bodily harm, life imprisonment with possibility of parole is prescribed as punishment." (*People v. Britton, supra,* 6 Cal.2d at pp. 4-5; *People v. Holt* (1949) 93 Cal.App.2d 473, 476; *People v. Haley* (1941) 46 Cal.App.2d 618, 624-625; 17A Cal.Jur.3d Criminal Law: Crimes Against the Person, § 339.)

*People v. Holt, supra,* 93 Cal.App.2d at page 476 is to the same effect.  Following guilty pleas to kidnapping for robbery, the trial court took testimony from a kidnapping victim and found he suffered bodily harm.  The defendants were sentenced to life without the possibility of parole.  On appeal, the defendants sought reversal of their sentences on grounds the information did not allege the victim suffered bodily harm.  (*Ibid.*)  The Court of Appeal, citing *Britton,* held:  "It is now established law in this state that an indictment or information need only charge the essential elements of the statutory offense.  When this is done the accused is fairly apprised of what he is called upon to meet at the trial.  Except when the particular mode or means employed in the commission of a crime are of the essence thereof, they need not be alleged.  The essence of the offense denounced by section 209 of the Penal Code as a felony is the seizing, confining, kidnapping, etc., of the victim.  Where, as in the case now before us, it developed upon the plea of guilty that the victim suffered bodily harm the court was justified in the exercise of its discretion to fix the penalty at life imprisonment without possibility of parole.  In the instant case the information charged the offense in the language of the statute.  This was sufficient not only to inform appellants of the charge they were expected to meet but also, of the several punishments prescribed therefor, any one of which, upon conviction or plea of guilty, might be imposed upon them, depending upon the circumstances surrounding the commission of the offense [citations]."  (*Ibid.*)

And in *People v. Haley, supra,* 46 Cal.App.2d at pages 624-625, the Court of Appeal for the Third Appellate District also followed *Britton*.  "The defendant was not

8

prejudiced by the amendment of three counts of the indictment by adding to each of them the statement that the kidnapped persons 'suffered bodily harm' incident to the commission of the crimes charged. (*People v. Britton,* [*supra,*] 6 Cal.2d 1.) The amendments were made by leave of court, without resubmitting the indictment to the grand jury. It is true an indictment may not be amended in that manner so as to 'change the offense charges.' (Sec. 1008, Penal Code.) The addition of the language mentioned did not change the offense charged. It merely supplied the statement of facts which may be considered by the jury in determining the penalty for the crime as provided by section 209 of the Penal Code. The *Britton* case declares that the section last mentioned defines but one criminal offense. These challenged counts of the indictment charged the defendant with kidnapping named individuals with the intention of holding or detaining them for the purpose of robbery. That offense is not changed by adding the statement that the victims suffered bodily harm in the commission of the crimes. The allegation with relation to bodily harm is not an essential element of the crime of kidnapping. The changes in the present indictment in that regard were therefore harmless." (*People v. Haley, supra,* 46 Cal.App.2d at pp. 624-625.)

Here, the amended information charges defendant with the essential elements of kidnapping for ransom in the language of section 209, subdivision (a). It alleges, "On or about September 8, 2010, in the County of Los Angeles, the crime of KIDNAPPING FOR RANSOM, in violation of PENAL CODE SECTION 209(a), a Felony, was committed by DEQIANG SONG, who did unlawfully seize, confine, inveigle, entice, decoy, abduct, conceal, kidnap, and carry away LING S. with the intent to hold and detain, and who did hold and detain, the said LING S. for ransom, reward, extortion, and to exact from relatives and friends of said LING S. money and other valuable things, to wit, MONEY." The amended information thus apprised defendant of what he would be expected to meet at trial. When it developed at trial that Ling suffered bodily harm and was intentionally confined in a manner exposing her to a substantial likelihood of death, the jury could so find. Those findings affected the penalty imposed; they did not change the nature of the offense charged. (*People v. Haley, supra,* 46 Cal.App.2d at p. 624.)

9

There was no violation of defendant's due process rights or abuse of discretion under section 1009. (*People v. Britton, supra,* 6 Cal.2d at pp. 4-5; *People v. Holt, supra,* 93 Cal.App.2d at p. 476; *People v. Haley, supra,* 46 Cal.App.2d at pp. 624-625.)

Further, there is no showing of prejudice. As we have held: "[I]t does not constitute a denial of due process to permit amendment of an information during trial if the amendment does not change the nature of the offense charged nor prejudice the defendant's rights. [Citation.]" (*People v. Garringer* (1975) 48 Cal.App.3d 827, 833; accord, *People v. Haley, supra,* 46 Cal.App.2d at p. 625 [amendment to allege victim suffered bodily harm did not change offense and was therefore harmless]; see *People v. Arevalo-Iraheta* (2011) 193 Cal.App.4th 1574, 1580-1581 ["A court may allow amendment of an accusatory pleading at any time up to and including the close of trial so long as there is no prejudice to the defendant"]; *People v. Graff* (2009) 170 Cal.App.4th 345, 361 [same].) In the trial court, defense counsel, Robert Cornforth, admitted the amendment to the amended information had no effect on his strategic decisions. Nor has such an argument been made on appeal. Further, at trial Mr. Cornforth never asserted that defendant was not properly advised of any right or concerning any issue because of the amendment to the amended information. And no such argument has been made on appeal. There is no showing the amendment had any adverse effect on the defense strategy.

## B. Sufficiency Of The Evidence Of Bodily Harm

Defendant argues there was insufficient evidence he caused Ling to suffer bodily harm within the meaning of section 209, subdivision (a). He reasons the kidnapping was over once he undertook efforts to murder Ling. Defendant argues: "Here, the bodily injury inflicted was not part of the forcible kidnapping. As impliedly found by the [trial] court, the attempted murder involved a separate intent outside of the kidnapping. [Defendant] had ascertained that Ling's father had no money for ransom, which was confirmed by Ling. Ling also stated that she had no money. It was at that point that the

10

bodily harm was inflicted, after efforts to obtain a ransom were abandoned, and the bodily harm was inflicted, that was the apparent basis for the consecutive sentence imposed for the attempted murder. Prior to the acts comprising the attempted murder, Ling's hands were bound, and she remained unharmed."

In reviewing a challenge to the sufficiency of the evidence, we apply the following standard of review: "In reviewing a sufficiency of evidence claim, the reviewing court's role is a limited one. '"The proper test for determining a claim of insufficiency of evidence in a criminal case is whether, on the entire record, a rational trier of fact could find the defendant guilty beyond a reasonable doubt. [Citations.] On appeal, we must view the evidence in the light most favorable to the People and must presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence. [Citation.]"' (*People v. Ochoa* (1993) 6 Cal.4th 1199, 1206; see *Jackson v. Virginia* (1979) 443 U.S. 307, 319.)" (*People v. Smith* (2005) 37 Cal.4th 733, 738-739.)

To convict defendant of kidnapping for ransom, the jury was required to find: he kidnapped Ling; he intentionally held or detained Ling without her consent; and he did so to get money. (CALCRIM No. 1202; see *People v. Eid* (2010) 187 Cal.App.4th 859, 868-869 & fn. 6; *People v. Greenberger* (1997) 58 Cal.App.4th 298, 365-367 & fn. 52.) "Bodily harm," within the meaning of section 209, subdivision (a) means, as the Court of Appeal held in *People v. Schoenfeld* (1980) 111 Cal.App.3d 671, 685: the kidnapped victim suffered substantial or serious injury; the injury resulted from the application of physical force; and the physical force exceeded the amount necessarily involved in effectuating the kidnapping. (See *People v. Chacon* (1995) 37 Cal.App.4th 52, 59.)

Here, there was evidence defendant kidnapped Ling at knifepoint. He placed a knife against her throat and bound her feet and hands. He telephoned her father and demanded ransom. After Ling told defendant her family had no money, defendant slapped her. He subsequently strangled her until she lost consciousness. He also beat her about the face and slit her throat with the knife. Because Ling was unconscious, we do not know exactly when all of the wounds and injuries were inflicted. The jury could reasonably have concluded defendant inflicted bodily harm in the commission of the

11

kidnapping when he: put a knife to Ling's throat; bound her wrists and ankles; slapped her; strangled her until she was unconscious; beat her about the face; and slit her throat. The jury could further conclude defendant attempted to kill Ling well after the ransom demand was made by leaving her in a remote desert area to die. Hence there was substantial evidence defendant caused Ling to suffer bodily harm during the commission of the kidnapping.

## C. Unanimity Instruction

Defendant argues the trial court had a sua sponte duty to instruct the jury it had to agree on the act constituting the kidnapping. A unanimity instruction is required when evidence supporting an offense charged in a single count consists of more than one criminal act. (*People v. Russo* (2001) 25 Cal.4th 1124, 1132; *People v. Ortiz* (2012) 208 Cal.App.4th 1354, 1374-1375.) Here, defendant reasons a unanimity instruction was required because the prosecution presented evidence of two discreet acts to prove kidnapping for ransom. First, that during the drive to the desert Ling told defendant she was uncomfortable and she wanted to go home. Second, when defendant stopped the car and bound Ling's hands and feet. These two discreet acts in defendant's view required an unanimity instruction be given.

That argument mischaracterizes the prosecution. The prosecutor never asserted two discreet acts could each constitute kidnapping. Instead, the prosecution relied on a continuous course of conduct as constituting kidnapping for ransom. The evidence showed a continuous course of conduct from the time defendant bound Ling's wrists and ankles to the time he abandoned her in the desert after assaulting her. (*People v. Cortez* (1992) 6 Cal.App.4th 1202, 1209 [no unanimity instruction required where kidnapping was a prolonged, uninterrupted detention]; *People v. Ordonez* (1991) 226 Cal.App.3d 1207, 1231 [no unanimity instruction required where kidnapping was a continuous act and victim never regained liberty throughout kidnapping]; see *People v. Thomas* (1994) 26 Cal.App.4th 1328, 1335 [only one kidnapping occurred where there was a single

12

abduction followed by a continuous detention period].)  Under continuous course of conduct circumstances, no unanimity instruction is required.  (*People v. Maury* (2003) 30 Cal.4th 342, 423; *People v. Cortez, supra,* 6 Cal.App.4th at p. 1209; *People v. Ordonez, supra,* 226 Cal.App.3d at p. 1231.)

## D.  Sentencing

### 1.  Consecutive Sentences

Defendant challenges the consecutive sentences on counts 1 and 2 as violating section 654, subdivision (a).  Section 654, subdivision (a) provides in part, "An act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision."  Defendant reasons, "[T]he record shows that the kidnapping for ransom with bodily harm and the attempted murder were part and parcel of the same indivisible transaction."  Our Supreme Court set forth the test for determining the application of section 654, subdivision (a) in *Neal v. State* (1960) 55 Cal.2d 11, 19, disapproved on another point in *People v. Correa* (2012) 54 Cal.4th 331, 334, 338-344:  "Whether a course of criminal conduct is divisible and therefore gives rise to more than one act within the meaning of section 654 depends on the intent and objective of the actor.  If all of the offenses were incident to one objective, the defendant may be punished for any one of such offenses but not for more than one."  (Accord, *People v. Jones* (2012) 54 Cal.4th 350, 372.)  Our review is for substantial evidence to support the trial court's implied determination defendant harbored a separate intent and objective for each offense, kidnapping for ransom and attempted murder.  (*People v. McKinzie* (2012) 54 Cal.4th 1302, 1368; *People v. Osband* (1996) 13 Cal.4th 622, 730-731.)

The evidence in this case supports the trial court's implied determination defendant intended, initially, to kidnap Ling for ransom, but later formed an intent to kill

13

her.  Defendant drove 77 miles to a remote desert area.  He put a knife to Ling's throat and bound her wrists and ankles.  He telephoned her father and demanded ransom.  But when Ling said the family had no money, defendant told her, "If your family doesn't have money, then I'll kill you."  He strangled her until she was unconscious.  While she was unconscious, he beat her about the face and slit her throat.  Because the victim was unconscious, we do not know exactly when the injuries and wounds were inflicted.  Defendant subsequently left Ling to die in a remote desert area.  The trial court could reasonably conclude that leaving Ling to die in the desert well after the ransom demand was made evidenced a separate intent and objective for purposes of section 654.  (See *People v. Nichols* (1994) 29 Cal.App.4th 1651, 1656-1658; *People v. Porter* (1987) 194 Cal.App.3d 34, 38; *People v. Ratcliffe* (1981) 124 Cal.App.3d 808, 817; *People v. Roth* (1964) 228 Cal.App.2d 522, 534-545; *People v. Fields* (1961) 190 Cal.App.2d 515, 518.)

2.  Personal Knife Use Enhancement

The trial had the authority to sentence defendant for both deadly weapon use and inflicting great bodily damage.  (§1170.1, subds. (f)-(g); *People v. Ahmed* (2011) 53 Cal.4th 156, 168.)  But the trial court failed to either impose or strike the section 12022, subdivision (b)(1) personal knife use enhancement on count 1.  (See *People v. Jones* (2007) 157 Cal.App.4th 1373, 1380-1383 [trial court retains authority to strike section 12022, subdivision (b) enhancement]; see, e.g., *People v. Meloney* (2003) 30 Cal.4th 1145, 1154; *People v. Wilson* (2002) 95 Cal.App.4th 198, 200; *People v. Ruiz* (1992) 3 Cal.App.4th 1251, 1255.)  The failure to impose or strike the enhancement is a legally unauthorized sentence subject to correction for the first time on appeal.  (*People v. Irvin* (1991) 230 Cal.App.3d 180, 190; see *People v. Thomas* (1992) 4 Cal.4th 206, 209-210; *People v. Lopez* (2004) 119 Cal.App.4th 355, 364.)  Upon remittitur issuance, the trial court must either impose or strike the section 12022, subdivision (b)(1) enhancement on count 1.  (*People v. Jones, supra,* 157 Cal.App.4th at p. 1383; see *People v. Jordan*

(1986) 42 Cal.3d 308, 319, fn. 7; *People v. Bradley* (1998) 64 Cal.App.4th 386, 400, fn. 5.)

### 3. Statement Of Sentencing Reasons

Defendant argues the trial court failed to state its reason for imposing consecutive sentences. To begin with, the sentencing rules, with their statement of reasons requirements, have no application to indeterminate sentences. (Cal. Rules of Court, rule 4.403; *People v. Black* (2007) 41 Cal.4th 799, 823; *People v. Felix* (2000) 22 Cal.4th 651, 658-659.) In any event, defendant acknowledges that he forfeited this argument (*People v. Gonzalez* (2003) 31 Cal.4th 745, 751; *People v. Scott* (1994) 9 Cal.4th 331, 353.) He asserts his counsel was ineffective for failing to object. We find the trial court did give its reasons for consecutive sentences. Therefore, defense counsel was not ineffective for failing to object. The trial court considered: a victim statement, letters written by defendant's mother and wife, and defendant's prior criminal record. The court found the crime was particularly heinous. This was a sufficient statement of the trial court's reasons for imposing consecutive sentences. In any event, defense counsel was under no duty to make meritless motions or contentions. (*People v. Frye* (1998) 18 Cal.4th 894, 985, disapproved on another point in *People v. Doolin* (2009) 45 Cal.4th 390, 421, fn. 22; *People v. Price* (1991) 1 Cal.4th 324, 387.) As noted, the Judicial Council sentencing rules have no application to indeterminate sentences. Moreover, given the record before us, it is not reasonably probable a sentence more favorable to defendant would have been imposed had an objection been interposed. (See *People v. Davis* (1995) 10 Cal.4th 463, 552; *People v. Champion* (1995) 9 Cal.4th 879, 934, overruled on other grounds as noted in *People v. Combs* (2004) 34 Cal.4th 821, 860.)

### 4. Court Operations And Facilities Assessments

The trial court declined to impose court operations (§ 1465.8, subd. (a)) or court facilities assessments (Gov. Code, § 70373, subd. (a)(1)) on count 2. ["The court will not impose those fees as to count 2."] This was a legally unauthorized sentence. The assessments are mandatory. (*People v. Robinson* (2012) 209 Cal.App.4th 401, 405; *People v. Rodriguez* (2012) 207 Cal.App.4th 1540, 1543, fn. 2; *People v. Woods* (2010) 191 Cal.App.4th 269, 271-273.) The judgment must be modified to impose the assessments on count 2.

### 5. Presentence Custody Credit

The trial court gave defendant credit for 591 days in presentence custody. However, defendant was arrested on September 9, 2010, and sentenced on May 10, 2012. Therefore, he should have received credit for 610 days in presentence custody. (*People v. Rajanayagam* (2012) 211 Cal.App.4th 42, 48; *People v. Morgain* (2009) 177 Cal.App.4th 454, 469.) The judgment must be modified to so provide.

### 6. Abstract Of Judgment

The abstract of judgment misstates defendant's sentence on count 2 as life *without* the possibility of parole. It must be corrected to reflect the sentence imposed—life *with* the possibility of parole. In addition, the abstract of judgment must be corrected to reflect the judgment as modified as discussed above and the disposition of the sentence enhancement on count 1.

## IV. DISPOSITION

The judgment is modified to impose a $30 court facilities assessment (Gov. Code, § 70373, subd. (a)(1)) and a $40 court operations assessment (Pen. Code, § 1465.8, subd. (a)) on count 2. Further, the judgment must be modified to award defendant credit for 610 days in presentence custody. In all other respects, the judgment is affirmed. Upon remittitur issuance, the trial court must either impose or strike the Penal Code section 12022, subdivision (b)(1) personal knife use enhancement on count 1. The clerk of the superior court must prepare an amended abstract of judgment that reflects: the disposition of the sentence enhancement on count 1; a sentence of life with the possibility of parole on count 2; a $30 court facilities assessment and a $40 court operations assessment on count 2; and 610 days of presentence custody credit. The clerk of the superior court must deliver a copy of the amended abstract of judgment to the Department of Corrections and Rehabilitation.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

TURNER, P.J.

We concur:

KRIEGLER, J.

O'NEILL, J.*

---

\* Judge of the Ventura Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

17